DOWNS & SKILLINGER vs. ROSS.

A contract for the sale of 700 bushels of wheat; 250 of the quantity being then in a granary, and the residue *unthreshed*, but which the vendor agreed to get ready and deliver, together with the wheat in the granary after giving it a second cleaning, in six d\ys, at a specified place, payment to be made on delivery, was held to be *within the statute of frauds;* there being no *note* in writing of the contract, no delivery of part of the property, and no payment of any part of the purchase money.

THIS was an action of *assumpsit*, to recover damages for not delivering wheat pursuant to contract, tried at the Chemung circuit in October, 1837, before the Hon. ROBERT MONELL, one of the circuit judges.

A witness for the plaintiffs testified that he was the plaintiff's agent for the purchase of wheat. On the 30th August, 1836, he called on the defendant, who resided in *Elmira*, to purchase his wheat. The defendant had some wheat in his granary, and was then threshing more. There were about 250 bushels in the granary. A contract was finally made for 700 or 800 bushels at ten shillings per bushel, which the defendant agreed to deliver by the fifth of September then next, at Westlake's Basin, on the Chemung canal feeder. The defendant said *he could not get more wheat ready* by that time, though he had more. The wheat was to be paid for on delivery. *The threshed wheat in the granery was not well* [ *271 ] *cleaned, and the defendant said he would clean it over.* This was a part of the wheat which the defendant agreed to sell. There was no writing, no money paid, and no part was delivered. The defendant afterwards refused to go on with the contract, and this action was brought to recover damages—the wheat on the day for delivery being worth more than the contract price. The defendant moved for a nonsuit, on the ground that the contract, either in whole or in part, was within the statute of frauds, and void. The nonsuit was denied. After much contradictory evidence about what the verbal agreement was, and evidence tending to prove fraud on the part of the plaintiff's agent, those questions of fact were left to the jury. The judge charged the jury that the contract was not within the statute of frauds—that

where something was yet to be done—some labour to be performed to prepare the goods for delivery, the contract was more properly for work and labor than for goods sold. Verdict for plaintiffs, 109,37, which the defendant now moves to set aside.

*J. A. Spencer*, for defendant.

*S. Stevens*, for plaintiffs.

After advisement, the following opinion was delivered :

By BRONSON, J.   No part of the purchase money was paid, none of the property was delivered, and there was no writing between the parties.   If, then, this was a contract for *the sale of goods*, the statute declares it void. 2 *R. S.* 136, § 3.   The substance of the transaction may be stated in few words.   The merchant or miller went to the farmer to purchase his wheat, a part of which was already threshed and in the granary, and the residue was in a course of preparation for market.   The farmer said he would clean over again that which was in the granary, continue threshing that which was still in the straw, and within six days would be ready to deliver seven or eight hundred bushels.   A contract was concluded for the purchase *of that quantity, to be delivered by a specified day, and to be paid for on delivery.   In still fewer words, defendant sold his wheat, and agreed to deliver it in a merchantable condition.   It is said that this was, either in whole or in part, a contract for *work and labor*, and so not within the statute.   But I think it was neither more nor less than a contract of *sale;* and if we are not tied down by the commentaries with which the statute of frauds has been so heavily overlaid, the agreement must be declared void.

[ *272 ]

It is not to be denied that a pretty large license was formerly taken in the construction of statutes.   Refined and artificial distinctions were sometimes sanctioned for the purpose of taking cases out of the operation of legislative enactments, and a broad foundation was thus laid for the vast amount of legal controversy which has followed.   It was said at Westminster Hall, more than seventy years ago, that the statute of frauds had not been *explained* at a less expense than one hundred thousand pounds sterling ; and Chancellor Kent, at the time he wrote his commentaries, thought the sum might then be put down at a million and upwards.   2 *Kent's Comm.* 513, *note.* These are both very safe estimates, and still the statute is not yet " explained ;" and it never will be, so long as it is held that a promise by the seller to thresh his grain, or to blow the chaff out of a bin of wheat before sending it to market, changes the contract of sale into an agreement for work and labor.   Whatever may be the bearing of the earlier cases, the more recent decisions will not lead us into any such absurdity.   If the thing sold

exist at the time *in solido*, the mere fact that something remains to be done to put it in a marketable condition, will not take the contract out of the operation of the statute.

In *Towers* v. *Osborne*, 1 *Strange*, 506, it was held by *Pratt*, Ch. J. that the contract was not within the statute, because there was not to be an *im. mediate* delivery of the goods. This decision was followed by Lord *Mansfield*, in *Clayton* v. *Andrews*, 4 *Burr.* 2101. But the doctrine that the statute does not apply to *executory* contracts was entirely exploded in *Rondeau* v. *Wyatt*, 2 *H. Black.* 63 ; and that case has been followed ever since. *Cooper* v. *\*Elston*, 7 *T. R.* 14. *Bennett* v. *Hull*, [ \*273 ] 10 *Johns. R.* 364. *Jackson* v. *Covert*, 5 *Wendell*, 139. ,The statute has little to do with any other than executory contracts, and it might better be repealed, than to say that such agreements are not within its influence.

The fact that the defendant was to deliver the wheat at another place, which probably enhanced the price which he was to receive, cannot aid the plaintiff's case. *Astley* v. *Emery*, 4 *Maule & Selw.* 262. The same fact will be found to have existed in many other cases ; but it has never been held a sufficient ground for taking the contract out of the operation of the statute.

Nothing remains but the fact that the wheat, though in existence, was not completely prepared for market at the time the contract was made. The cases to which we have been referred on this point, will not answer the plaintiff's purpose. With a single exception, they all relate to contracts for the sale of a thing *not then in existence*, but which was to be constructed or manufactured by the vendor. In *Towers* v, *Osborne*, 2 *Strange*, 506, the chariot which the defendant bespoke, was *not yet made*. So of the oak pins, in *Groves* v. *Buck*, 3 *Maule & Selw.* 178—the waggon, in *Crookshank* v. *Burrell*, 18 *Johns. R.* 58—the buggy, in *Mixer* v. *Howarth*, 21 *Pick.* 205 —and the nails, in *Sewell* v. *Fitch*, 8 *Cowen*, 215. These decisions, whether right or wrong, cannot affect the present question.

The only case which can aid the plaintiffs, is *Clayton* v. *Andrews*, 4 *Burr.* 2101, where it was held, that a contract for the sale of *unthreshed* wheat, *to be delivered at a future day*, was not within the statute. The decision went upon the ground that the statute did not apply to *executory* contracts ; and although that doctrine was expressly overruled in *Rondeau* v. *Wyatt*, 2 *H. Black.* 63, which has ever since been followed, yet such was the deference for the opinions of *Lord Mansfield*, that the courts struggled for a time to find out some other ground on which the decision could be supported. *Lord Loughborough*, in *Rondeau* v. *Wyatt*, said, " there was some *work* to be performed, for it was necessary that the corn should be *thresh-ed* before the delivery :" \*but he was forced to admit that this    [ \*274 ] was a " nice distinction." It was, indeed, so " nice" that it did

not occur to the mind of Lord Mansfield in making the decision, and has never, I believe, been sanctioned by any case in Westminister Hall. But on the contrary, when it became necessary to pass upon the point, the distinction was pronounced *absurd*, and the case of *Clayton* v. *Andrews*, in every possible view of it, was expressly overruled. *Garbutt* v. *Watson*, 1 *D. & R.* 219, and 5 *B. & Ald.* 613, *S. C.* The defendant agreed by parol for the purchase of 300 sacks of flour, *not then ground*, to be *prepared* and shipped at a future day. All the judges agreed, that the case of *Clayton* v. *Andrews* could not be supported, and held that the contract was within the statute. *Best J.* said, it was "*purely* a contract for the sale of goods. It is absurd to consider it as a contract for the sale of flour, *and for so much work and labor to be performed for the buyer*. It is no more than a contract for the sale of so much flour, the seller *undertaking to put it into that condition in which he contracts to sell it*." This is a stronger case than the one at bar, for the flour had not been manufactured—it did not exist at the time of making the contract. This decision was followed up by *Smith* v. *Surman*, 4 *Man. & Ryl.* 455, and 9 *Barn. & Cres.* 561, *S. C.* The defendant agreed to purchase a quantity of timber of the plaintiff, and the contract was held within the statute, although a part of the trees were standing at the time of the bargain, and were afterwards to be cut by the vendor. *Bayley, J.* denied that it was "a *mixed* contract for goods and chattels, *and for work and labor* to be bestowed and performed" by the vendor for the vendee. He said it was "a contract for the future sale of the timber, *when it should be in a fit state for delivery*. The vendor, in felling the timber and preparing it for delivery, was, in my opinion, doing work for *himself*, and not for the vendee." *Littledale, J.* said, "a contract for *mere* work and labor is not expressly mentioned, and may therefore not be within the statute ; but where the contracting parties contemplate a sale of goods, although the subject matter, at the time of making the [ *275 ] contract, *may not exist as goods, *but is to be wrought into that state by the vendor's bestowing work and labor upon his raw materials*, that, in my opinion, is a case within the statute." He added, "it appears to me to be sufficient, if, at the time of the *completion* of the contract, *the subject matter* be goods, wares and merchandizes." In *Watts* v. *Friend*, 5 *Man. & Ryl.* 439, and 10 *Barn. & Cres.* 446, *S. C.*, the contract was for the sale of a crop *to be raised*—the seed not having yet been put into the ground—and it was held void within the statute, for not being in writing.

These cases show, that the English courts have got back again on to the firm foundation of reason and common sense. The statute of frauds is no longer a dead letter. We have never followed the case of *Clayton* v. *Andrews*, and have, therefore, no occasion for retracing our steps. Whether the decision in *Sewall* v. *Fitch*, 8 *Cowen*, 215, can be supported, is a ques-

tion which need not now be considered: It is enough for the present, that it is not a case in point.

The CHIEF JUSTICE concurred.

COWEN, J. dissented, and delivered the following opinion:

It is entirely clear, on the cases decided by this court, that the contract in question is without the statute of frauds. *Sewall* v. *Fitch*, 8 *Cowen*, 215, 219, *and the cases there cited.* 2 *Kent's Comm.* 511, 12, *note d, 3d ed.* The wheat was none of it in a condition for transportation and delivery. Most of it was unthreshed, and that in the bin was to be cleaned. The contract was, in part, for work and labor in finishing the preparation of the whole, which both the English and New-York cases denied, until very lately, to be a sale of goods within the meaning of the statute of frauds. That statute respects a *sale*. The cases said it meant a sale unmixed with a contract of labor in preparing the article for delivery. I admit that the mere circumstance of agreeing to transport and deliver will not take away the character of a simple sale. *Jackson* v. *Covert's adm'rs*, 5 *Wendell*, 138.

*Astey* v. *Emery*, 4 *Maule & *Selw.* 262. Nor do I deny, that [ *276 ] were the question open, a contract to manufacture and sell would more correctly be considered a sale within the statute. But I am not prepared to concede that the decisions for more than half a century, both at Westminster Hall and in this state, are so obviously absurd, that we ought now to overturn them. It is true, that the king's bench have recently, A. D. 1822, repudiated the case of *Clayton* v. *Andrews*, 1767, after so long acting upon it (and the common pleas too) as having settled the doctrine of the very case at bar, a sale of wheat, understood by both parties to be unthreshed. *Garbutt* v. *Watson*, 1 *Dowl. & Ryl.* 219 ; 5 *Barn. & Ald.* 613, *S. C.* followed by *Smith* v. *Surnam*, 4 *Mann. & Ryl.* 455 ; 9 *Barn. & Cress.* 561 ; *and see Watts* v. *Friend*, 5 *Mann. & Ryl.* 439, *and the cases there cited;* 10 *Barn. & Cress.* 446, *S. C.* Best, J. in *Garbutt* v. *Watson*, chose to characterize former adjudications of his court as absurd. We have not heretofore deemed them so ; and if there be the least obligation to abide by rule founded on a settled course of decision, the case in which he was taking part is not law. I think there is such an obligation. The principle of the rule existed, and was acted upon in England from the year 1720. It was then held in *Towers* v. *Osborne*, 1 *Strange*, 506, and *Clayton* v. *Andrews* proceeded upon that.

It will be perceived that I have treated the second objection taken at the trial as unfounded in point of fact. If the wheat in the bin had been cleaned, the contract for so much would have been void ; and it would have followed according to the settled doctrine in respect to such contracts, that the whole would have been void, and the judge should have nonsuited the plain-

tiff. *Thayer* v. *Rock*, 13 *Wendell*, 53, *and the books there cited.* But I take the principle of the former English cases, and all the cases in this court to be, that where the article which forms the subject of sale is understood by the parties to be defective in any particular which demands the finishing labor of the vendor, in order to satisfy the bargain, it is a contract for work and labor, and not of sale, within the meaning of the statute. 2 [ *277 ] *Kent's Comm.* 512, *note*, 3*d ed.* The judge told the jury *so, and they found the fact. This construction of the statute of frauds, (*see the same note,*) has been corrected by the stat. 9 *Geo.* IV. *ch.* 14, which extends it to unfinished articles ; a method which I must be allowed to think much more accordant with sound legal sense, than that which was undertaken in *Garbutt* v. *Watson.*

New trial granted.

---

*Ex parte* The Mayor, &c. of Albany.

Where a municipal corporation in the improvement of the streets of a city, act within the scope of the authority conferred upon them by a statute law of the state, and comply with the forms of the statute, their proceedings will not be reversed upon *certiorari.*

It is no objection that in conducting the proceedings, they do not conform to by-laws established by themselves to carry into effect the powers conferred upon them.

Where the laws of the state authorize improvements, and require an assessment of the expense thereof on all houses and lots benefited in proportion to the advantage which each shall be deemed to have acquired, the assessment upon the owner of the lot is not limited to the expense incurred *in front of his particular lot*, but may be extended to his *proportion of the whole expense;* and whilst the assessors act upon *persons* and a *subject matter* within their jurisdiction, the proceedings will not be reversed upon *certiorari; although the assessors* may have erred in the discharge of their duties.

*It seems*, that where a party means to examine into collateral facts, (not appearing in the record of the proceedings,) for the purpose of showing a *want of jurisdiction*, he cannot be relieved by *certiorari*, but must resort to his action ; how far such action will be available, *quere.*

A *certiorari* should name the parties aggrieved, and set forth the cause of complaint.

The allowance of a *certiorari* in cases of this kind rests in the discretion of the court, even where error has intervened.

The office of a *common law certiorari* discussed ; and cases upon the subject cited and commented upon.

This was a *certiorari* directed to " The mayor, aldermen and commonalty of the city of Albany, and to Charles S. Olmsted, Sylvester Rathbone, William Thorburn, Stephen T. Thorne and James McCabe, members of the common council of said city, composing the committee appointed by said mayor, aldermen and commonalty in common council [ *278 ] *convened, to whom the assessment and remonstrance thereto in the matter of *repitching and repaving North-Market street* above Lumber-street, was referred." The corporation made a return to the