MEAD vs. CASE.

A parol agreement was made, between the plaintiff and defendant, for a marble monument, to be furnished by the former to the latter, for his deceased relatives, for the price or sum of $200.   The marble, consisting of several pieces, or parts, was put together, into the form of the monument, which was standing in the plaintiff's shop, or in the yard adjoining, at the time. And the plaintiff agreed to polish, letter and finish the monument, and set it up for the defendant.   *Held* that this was not an agreement to sell the defendant a monument already made, and therefore void by the statute of frauds, but was an agreement to make, or manufacture one, not then in existence, and was valid and binding.   SMITH, J. dissented.

THIS action was brought upon a contract to recover the sum of $200, which the plaintiff alleged the defendant promised to pay for the finishing of a certain marble monu-

Mead *v.* Case.

ment. The answer was a general denial. The action was tried at a circuit court in the county of Wayne, in October, 1859, before Hon. T. R. STRONG, and a jury. The proof on the part of the plaintiff showed, that in the month of November, 1857, the plaintiff agreed with the defendant to polish, letter and finish a monument, and set it up for the defendant, for which the latter was to pay the sum of $200; that he, the plaintiff, polished the monument and put on the lettering—the names of the defendant's father, mother and sister—and offered to deliver it to the defendant, who refused to accept or pay for the same. The proof, on the part of the defendant, tended to show that he never made any contract with the plaintiff; that the plaintiff got the names for lettering the monument from a Mrs. Manning, and that the monument was not finished in a workmanlike manner. The defendant moved for a nonsuit, on the grounds that the plaintiff had failed to make out a cause of action, and that the contract proved by the plaintiff was void under the statute of frauds. The court refused to grant the motion and the defendant excepted. The jury found a verdict for the plaintiff for $200, and the defendant appealed from the judgment.

*George Rathbun*, for the appellants.

*George H. Arnold*, for the respondent.

JOHNSON, J. The only question in this case, worthy of consideration, is that raised by the exception to the refusal to nonsuit the plaintiff, on the ground that the bargain for the monument in question was within the statute of frauds. The contract, according to the verdict of the jury, was for a monument to be furnished by the plaintiff to the defendant, for his deceased father, mother and sister. From the evidence it appears that the stone or structure, upon which the inscriptions were to be made, consisting of several pieces or parts, was put together into the form of the monument which the

defendant desired, and was standing in the plaintiff's shop, or in the yard adjoining, when it was selected, and the agreement made that it should be finished and delivered to the defendant thereafter. The plaintiff, who was engaged in that business, went on, and as the jury have found, made and completed the monument according to the agreement. The defendant refused to accept it when offered, and the question arises whether this was an agreement for work and labor, and materials to be furnished, or whether it was an agreement for the sale of personal property. This depends upon the question whether it was an agreement to make a monument for the defendant, or to sell him one already made. If it was an agreement to make, or manufacture, one not already in existence, it is not within the statute of frauds, and the recovery is correct. (*Sewall* v. *Fitch*, 8 *Cowen* 215. *Crookshank* v. *Burrell*, 18 *John.* 58.) Spencer, J. in the last case, says, "however refined this distinction is, it is well settled, and it is now too late to question it."

It is very plain, I think, that the monument bargained for was to be afterwards made, by the plaintiff's labor and skill, and had no existence as such, at the time of the bargain. It is true that the material was present, and had been worked into the general form which the defendant desired. All that was wanted was, to polish it properly, and engrave the necessary inscriptions upon it. But it was precisely this labor and skill that was necessary to convert it into the monument which the plaintiff agreed to furnish. Without this, it was no monument whatever; certainly not to the defendant's deceased relatives.

A monument is something designed and constructed to perpetuate the memory of some particular person, or event. Before the material was polished and the inscriptions engraved upon it, it was a mere structure of stone, blank and meaningless. It was not this stone, in this condition, that the defendant bargained for; if it had been, the contract would most likely have been within the statute.. What he bargained

Mead *v.* Case.

for was the necessary labor and skill to convert this stone into an enduring memorial of the dead: This labor and skill did not convert the stone into an article of general merchandise, but into the particular thing bargained for. For any other purpose, the valuable material had been wholly destroyed. It was then entirely unfitted for a sale to any other person, or for any other purpose.) It is argued that the value of the labor, required to convert the stone into the monument, is so insignificant, when compared with the price, and the value of the article when completed and ready for delivery, according to the agreement, that the law ought not to regard it as an agreement for the employment of labor and skill, but as the sale of a manufactured article.

It is a sufficient answer to this to say, that there is nothing in the evidence to show what proportion the value of the labor and skill bore to the value of the material. But if it did, it would furnish no test whatever. A great variety of articles, manufactured to order, will readily occur to every mind, in which the value of the labor in making up, bears a very small proportion to the cost of the article to the purchaser. No such test has ever been applied, and certainly this is not the case to which it should first be made applicable. A test of this kind would operate far less harshly if applied to articles adapted to general sale. (It is also argued that the real manufacture of the monument in question consisted, mainly, in fashioning the several parts, of which the body was composed, and dressing them more or less perfectly. But this was mere labor in preparing the material, out of which a monument of that character might be made. When all that was done, the structure lacked wholly the essential characteristics of the thing required, and was converted into that thing solely by the application of additional labor and skill, of a different and higher character. It was as much converted, or manufactured, into a monument, after it was thus fashioned and put together, as a garment is made, or manufactured, from cloth previously manufactured from wool

or other raw material; or a sign, by painting, or engraving the necessary inscriptions or devices upon wood, metal or other material previously prepared in that form ; or statuary by the delicate and skillful chiseling of the creative artist, after the marble has been wrought into the general form by ruder labor ; the process in each case, and degree of alteration, being somewhat different.

The judgment should therefore be affirmed.

KNOX, J. concurred.

E. DARWIN SMITH, J. (dissenting.)  In the conclusion to which my brethren have come, in this case, I cannot concur ; and am not quite satisfied to let the decision pass with a simple silent dissent.  The statute of frauds has been a most fruitful source of litigation.  Chancellor Kent said the expense of its explanation might be put down at the sum of a million of pounds sterling, and upwards, in this country and in England.  This great amount of litigation and expense has obviously resulted from a departure by the courts from one of the plainest principles or rules for the construction of statutes—to render them according to the natural and obvious import of the language used by the legislature; *Waller* v. *Harris*, (20 *Wend.* 561; 11 *Clark & Fin.* 143 ;) and when the words of an act are precise and unambiguous, to expound those words in their natural and ordinary sense. If the courts had uniformly adhered to this rule I cannot think there would have been so much confusion and uncertainty in regard to the true interpretation of this statute.  The English courts started off and long continued in the practice, if not in the theory, of regarding the statute unfavorably, and its simple text was persistently, for many years, nullified, perverted or evaded by numerous decisions, each departure furnishing a precedent for another refinement more at variance than the first from the true intent and meaning of the statute.  It was at one time most preposterously held that the

provision relating to the sale of goods did not apply to *executory* contracts, (and it is difficult to see how it really could apply to any others,) but only applied to sales of goods deliverable *immediately.* But the most successful evasion of this portion of the statute, in England and in this country, has been accomplished under the guise that the contracts were for *work and labor.* The language of the original statute is very plain. " No contract for the sale of any goods, wares or merchandises for the price of ten pounds sterling or upwards, shall be allowed to be good except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest, or that some note or memorandum of it in writing be made and signed." The language of our statute is equally plain, clear and explicit. " Every contract for the sale of any goods, chattels or things in action, for the price of $50 or more, shall be void unless" &c. The test of the statute, applied to every case, is simply—*is the contract for the sale of goods*—is that the substance of the transaction, the intent and meaning of the contracting parties. If so, the contract is within the statute. One of the chief difficulties in the construction of this statute has arisen in respect to the class of contracts where something remained to be done in the construction or completion of the property before delivery. The cases, on this subject, divide themselves into two classes. One where the thing contracted for is really not *in esse* at the time of the *contract,* and is therefore incapable of being seen, inspected, delivered or accepted, but is to be thereafter *manufactured.* Such was the case in 1*st Strange,* of *Town* v. *Osborn,* which was a contract for the construction of a chariot ; the case of *Grover* v. *Buck,* (3 *Maule & Sel.* 178,) which was the case of oak pins yet in the stub ; and that of *Crookshanks* v. *Burrel,* (18 *John.* 58,) which was the case of a contract to make the wood-work of a wagon. In this class of cases it is held, and very properly, that the contract is for work and labor, and not within the statute. Within this class come *Courtright* v. *Stewart,* (19 *Barb.* 455 ;) *Parker* v.

*Schenck,* (28 *id.* 38;) and *Spencer* v. *Cone,* (1 *Met.* 283.) The case of *Mixer* v. *Howell,* (21 *Pick.* 206,) was held by the court a contract " to build a carriage for the defendant," and upon this construction rightly belongs to this class of cases. The other class embraces cases where the thing covered by the contract has at the time of the contract a potential existence *in solido,* and something is to be done to it in the completion of it, or in putting it in proper marketable condition for use or sale. The later cases hold that in this class of cases the contract is within the statute. Of this class was *Downs* v. *Ross,* (23 *Wend.* 272,) where for the first time in this state, so far as relates to the question under discussion, the statute is applied, I think, so far as the cases are reported, according to its true spirit and intent. This was the case of a sale of wheat, part threshed and part unthreshed. This was held purely a sale of goods. So in *Garbutt* v. *Watson,* (1 *D. & R.* 219, 5 *B. & Ald.* 613, *S. C.,*) where the contract was for 300 sacks of flour not then ground, to be prepared and shipped at a future day. This was held a sale. There is also another class of cases where the thing sold is not in esse, but is to be thereafter manufactured, which divide themselves between these two classes, according to the particular circumstances of each case. The case of *Sewall* v. *Fitch,* (8 *Cowen,* 215,) belongs to this class, and was decided upon the rule applicable to the first class, but I think erroneously. It was really a contract of *sale,* in substance. The plaintiff applied to purchase nails and contracted for the sale of 300 casks of cut nails, and the clerk told him the quantity was not then on hand, but they could be obtained from the manufactory on the opening of navigation &c. This clearly was not a contract for *work and labor.* It seems to me preposterous, and a perversion of language, to call it a contract for the work and labor of manufacturing the nails. It was a contract for the *purchase* of nails to be thereafter delivered. The party did not apply to the defendant to contract for a singular and unusual kind of nails to be specially manufac-

Mead *v.* Case.

tured for him, like the case of the pump, in *Parker* v. *Schenck,* (*supra,*) or a single article like a wagon, as in *Crookshanks* v. *Burrell.* It is like the case of *Gardner* v. *Joy,* (9 *Metc.* 177,) in which the plaintiff applied to purchase candles, and contracted for 100 boxes, which were to be thereafter manufactured by the defendant and delivered at a future period. The supreme court of Massachusetts held this to be a contract of *sale,* and within the statute. It was a contract to purchase and sell candles to be delivered at a future time. In *Mixer* v. *Howett,* (21 *Pick,* 200,) which was the case of a buggy to be manufactured, the case was held not within the statute, for that reason. Judge Shaw says, "When the contract of sale is either of an article then existing, or of articles which the vendor usually has for sale in the course of his business, the statute applies to the contract as well when it is to be executed at a future time as when it is to be executed immediately." The principle of this class of cases applies to the present case. The contract in this case was for the *sale* of a monument for the price of $200. The plaintiff says he applied to the defendant to *buy* a monument, and they finally agreed upon the sale of the monument particularly described, subject to the approval, on inspection, of the defendant's brother ; the brother saw it, approved of it, and told the defendant to finish it. The plaintiff then took it into his shop, polished the marble and put in the lettering and finished it up. Here was a case of the *sale* of a specific article in existence *in solido, seen* and *inspected* and *capable of immediate delivery.* It required some additional work upon it to render it marketable, as with the wheat, in *Downs* v. *Ross,* or the flour, in *Garbut* v. *Watson ;* but the substance of the transaction was a bargain and sale of the monument, not a contract for work and labor. If the marble had been in the quarry, and the contract had been for the plaintiff to get it out and manufacture it, putting it into shape as a monument and perfecting it as such, that would have been a contract for *work and labor.* But the plaintiff kept these

monuments for sale. He had to polish them off and letter them, as occasion required, but he was his own workman ; the work he did on the monument was for himself, not for the plaintiff. Here was a monument sold for $200, and the work and labor done upon it after the sale may have been worth $15 or $20. It is not in proof how much, but it obviously constituted, in value, but a very small proportion of the $200. As in the construction of the wagon, in the case in 20 *John.* (*supra,*) the raw materials were obviously of small value compared with the labor, and so in most cases of that class. The bargain, in such cases, is for the skill and labor and services of the mechanic with the materials to be found. The contract in this case, as I look upon it, was a contract to sell the monument, and deliver it at a future day. In the meantime it was to be polished and lettered. This work was included in the purchase price fixed at the time. The view of my brother JOHNSON, in effect, that the pieces of marble composing the monument in question did not constitute a monument while the same was in the plaintiff's yard and shop, unfinished, and could only be fitly called a monument when put up in memorial of the dead, I cannot appreciate. When seen and inspected, in the plaintiff's yard, the several pieces were in the precise shape and form in which they afterwards remained. They were together in such shape, put up as designed, each stone in its proper place, and were together called, by the parties, a monument. It is true they were to be removed and placed at the grave of the deceased friends of the defendant, and would not actually constitute any memorial to the deceased until so placed. But the business of the plaintiff was to get from the quarry, manufacture and keep for sale, various kinds of marble designed for grave stones and monuments. He had been in this business for 25 years. He called on the plaintiff and asked him if he wanted a monument. The language was, "I asked him if he were ready to *buy* a monument." The plaintiff proved by a witness that the defendant said " he had *bought* a mon-

ument of Mead." The witness, Kelly, who heard the conversation between the parties, testified that "plaintiff said to defendant that he would like to *sell* him a monument." Another witness, who was present at the same time, said, "Plaintiff wanted to *sell* a monument."

All the evidence tends to show that the contract was for the *sale* of a monument. It was spoken of as a thing *then existing* to be *sold*, not as a thing to be *manufactured.* They called it a monument with reference to the use for which it was designed. It was a sale, if there were any bargain made, of the marble then comprising what the parties called a monument; as much so, in my opinion, as if the article had been a carriage, requiring for its completion an additional coat of paint or of varnish, a tongue, or thills, or whiffletree or other like appendage. (The work to be done to finish the monument was not essential to its existence, character or design, but to its *completeness* and *comeliness merely.* The legislation in England has put an end to all such questions in that country, by an act of the 9th of George 4, ch. 14, which enacts "that the provisions of the statute of frauds shall extend to all contracts for the sale of goods, and notwithstanding the goods may be intended to be delivered at some future time, or may not at the time of such contract be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for making or completing thereof or rendering the same fit for delivery." . The supreme court of Wisconsin, in *Hardell* v. *McChune*, (1 *Chand. Rep.* 278,) say of this act that they regard it as "*laying down no new principle, covering no new ground,*" but as containing in remarkably clear, simple and explicit language "*the true construction of the original act.*" To this I fully agree; and it seems that the late decisions had brought back the law before the passage of this act to about the same point, and conforming to the plain intent and fair interpretation of the original statute; particularly the case of *Garbut* v. *Watson*, and *Down* v. *Ross*, with which coincide *Atkin-*

*son* v. *Bell*, (8 *Barn. & Cress.* 277,) and *Smith* v. *Surman*, (9 *id.* 561.) In this latter case, which was an action for the sale of lumber, Bayley, J. says : " The vendor, so long as he was felling the trees and preparing the timber for delivery, " *was doing work for himself, and not for the defendant.*" So in this case, so long as the plaintiff was polishing and finishing up this monument he was *doing work for himself.* This, Judge Harris, in *Comstock* v. *Stewart,* (*supra,*) says presents the true rule in such cases. See also, *Allen* v. *Jarvis,* (20 *Conn. Rep.* 50,) where the same rule is asserted. The case of *Donovan* v. *Willson,* (26 *Barb.* 138,) is not in conflict with these views. In that case the contract was to " manufacture, furnish and deliver beer." It comes perhaps within the class of cases referred to by Chief Justice Shaw, " where the workman is to put together materials and construct an article for the employer." That case, however, was decided upon the authority of *Bennett* v. *Hull,* (10 *John.* 364,) in which the contract was to deliver 100 barrels of apples. The price exceeding $25, the court held that the contract was within the statute, and that the statute applied to *executory contracts ;* and upon that of *Crookshank* v. *Branch,* and *Small* v. *Freely,* the first of which was rightly decided, and the latter, in effect, overruled in *Donn* v. *Ross,* and mistakenly-followed and under protest, in *Robertson* v. *Vaughn,* (5 *Sand. S. C. R.* 1.) I have always doubted the correctness of the decision in the case of *Donovan* v. *Wilson,* but think it may possibly stand, upon the cases of *Crookshank* v. *Bennett,* and *Mixer* v. *Howarth,* (*supra.*) But I cannot but think that the case, as Judge Duer says, in *Robertson* v. *Vaughn,* was " within the mischief the statute of frauds was designed to prevent, and the contract between the parties was substantially a sale of goods and merchandise, and not for work and labor." The statute of frauds was designed to prevent frauds and perjuries. Instead of fulfilling its office it has doubtless been the most prolific cause of fraud and perjury of any statute ever enacted, and

since parties are permitted to be witnesses in their own favor, the temptations and facilities for committing perjury are obviously not so diminished as to make it wise to repeal the statute, or defeat its operation by further judicial refinements. [The tendency in all our courts, at the present day, is to construe the statute of frauds in all its particulars according to the obvious meaning and fair import of its language. ) (*Mallory* v. *Gillett*, 23 *Barb.* 612, *recently affirmed in the Court of Appeals; Brewster* v. *Silence*, 4 *Seld.* 211; 11 *Barb.* 144.) In the language of my brother Johnson, in the last case, "I regard the statute as plain and imperative, and feel much more inclined to yield to its authority than to any array of opinions or dicta which have sought to evade or nullify it to save hard cases and prevent or remedy some particular act of injustice." I think the motion for nonsuit should have been granted, and that the case should go back for a new trial.

Judgment affirmed.

[MONROE GENERAL TERM, December 3, 1860. *Smith, Johnson,* and *Knox,* Justices.]