WILLIAM H. PARSONS et al., Respondents, v. JACOB LOUCKS et al., Appellants.

48   17
118  593

A parol contract to manufacture and deliver a quantity of paper, such paper to be thereafter manufactured at the contractor's mills, is not within the provisions of the statute of frauds.   (GRAY, C., dissenting.)

(Argued May 11, 1871; decided September term, 1871.)

APPEAL from judgment of the General Term of the Superior Court, in the city of New York, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

The action is to recover damages for an alleged breach of contract to manufacture and deliver a quantity of paper.

The referee to whom this case was referred found, and reported as matter of fact:

1st. That on or about the 30th day of October, 1862, it was agreed between the plaintiffs and the defendants, who then were and still are copartners as paper manufacturers, that the defendants should manufacture and deliver to the plaintiffs, at the city of New York, ten tons, to wit, 20,000 pounds of book paper, similar to other paper which the defendants had previously made for the plaintiffs, as soon as they, the defendants, should finish certain other orders for paper, which they stated they had on hand, and would take about three weeks from said date last mentioned, with a fair supply of water, to finish; and that the plaintiffs on such delivery should pay the defendants therefor thirteen cents a pound, less a discount of five per cent.

2d. That in the month of January, 1863, and in or about

the middle of that month, the defendants stated to the plaintiffs that they would not perform the said agreement, or manufacture or deliver said paper, and refused to perform the said agreement, although thereto requested by the plaintiffs, and that the plaintiffs were at all times ready and willing to receive said paper and pay for the same, pursuant to the terms of the said agreement, and that said defendants have never delivered to said plaintiffs said ten tons of paper, or any part thereof, but have refused so to do.

3d. That by reason of the breach of the said agreement the plaintiffs have sustained damage to the amount of $1,930, as of the time when such breach occurred, the difference between the contract price (thirteen cents, less five per cent discount) per pound, and the market price of such paper (twenty-two cents per pound) at the time of such breach, on 20,000 pounds, amount, to said sum of $1,930.

As matter of law: That the plaintiffs are entitled to recover of the defendants said sum of $1,930, with interest thereon since the 1st day of January, 1863, that is to say, the sum of $2,301.51, with costs.

*Augustus F. Smith* for the appellants. The contract was void under the statute of frauds. (2 R. S., 136, § 3 ; Chitty on Con., 66 ; *Rondeau* v. *Wyatt*, 2 H. Black., 63 ; *Downs* v. *Ross*, 23 Wend., 272, 273 ; *Seymour* v. *Davis*, 2 Sand.; S. C., 239 ; *Garbutt* v. *Watson*, 5 B. & A., 613 ; *Smith* v. *N. Y. C. R. R. Co.*, 4 Keyes, 200 ; *Smith* v. *Surman*, 9 B. & C., 561 ; *Courtright* v. *Stewart*, 19 Barb., 456, 458 ; *Watts* v. *Friend*, 10 B. & C., 446 ; *Wilkes* v. *Atkinson*, 6 Taunt., 11 ; dissenting opinion, Smith, J., in *Mead* v. *Case*, 33 Barb., 202 ; Story on Sales, § 260 *a*, and notes, pp. 270, 274 ; *Gardner* v. *Joy*, 9 Metcalf, 177 ; *Lamb* v. *Crafts*, 12 Metcalf, 353–6 ; *Robertson* v. *Vaughan*, 5 Sand. S. C. R., 1 ; *Donavan* v. *Willson*, 26 Barb., 138 ; *Crookshank* v. *Burrill*, 18 J. R., 58 ; *Stevens* v. *Santee*, 51 Barb., 532, 545.)

*John E. Parsons* for the respondents. The contract was for work and labor, and not within the statute of frauds.

Opinion of the Commission, per Hunt, C.

(*Crookshank* v. *Burrill*, 18 J., 58; *Sewall* v. *Fitch*, 8 Cow., 215; *Robertson* v. *Vaughan*, 5 Sand., 1; *Bronson* v. *Wiman*, 10 Barb., 406; *Donovan* v. *Wilson*, 26 Barb., 138; *Parker* v. *Schenck*, 28 id., 38; *Mead* v. *Case*, 33 Barb., 202; *Towers* v. *Osborn*, 1 Str., 506; *Rondeau* v. *Wyatt*, 2 H. Black., 63; *Cooper* v. *Elston*, 7 T. R., 17; *Clayton* v. *Andrews*, 4 Burr., 2101; *Buxton* v. *Bedell*, 3 East., 305; *Macklow* v. *Mangles*, 1 Taunt., 318, 320; *Emerson* v. *Heelis*, 2 Taunt., 42; *Groves* v. *Buck*, 3 M. & S., 178; *Clay* v. *Yates*, 36 Eng. L. & E., 540; *Mixer* v. *Howarth*, 21 Pick., 205; *Spencer* v. *Cone*, 1 Met., 283; *Hight* v. *Ripley*, 19 Maine, 137; *Cummings* v. *Denoltt*, 26 id., 397; *Abbott* v. *Gilchrist*, 38 id., 260; *Edwards* v. *G. T. Railway*, 48 id., 379; *Allen* v. *Jarvis*, 20 Conn., 38; *Eichelberger* v. *McCauley*, 5 Har. & J., 213; *Bird* v. *Muhlinbrink*, 1 Richardson, 199; *Cason* v. *Cheely*, 6 Geo., 554; *Phipps* v. *McFarlan*, 3 Min., 109; *Bennett* v. *Nye*, 4 Greene, Iowa, 410.)

Hunt, C. The paper to be delivered was not in existence at the time of the making of the contract in October, 1862. It was yet to be brought into existence by the labor and the science of the defendants. Of the 20,000, pounds to be delivered, not an ounce had then been manufactured. It was all of it to be created by the defendants, and at their mill. In such a case it is well settled, that the statute of frauds, does not apply to the contract. The distinction is between the sale of goods in existence, at the time of making the contract, and an agreement to manufacture goods. The former is within the prohibition of the statute, and void unless it is in writing, or there has been a delivery of a portion of the goods sold or a payment of the purchase-price. The latter is not. The statute reads, " every contract *for the sale* of any goods, chattels or things in action, for the price of fifty dollars or more, shall be void unless," etc. (2 R. S., 136, § 3.) The statute alludes to a *sale* of goods, assuming that the articles are already in existence. This distinction was settled in this State in 1820, by the case of *Crookshank* v. *Burrell* (18

John. R., 58), and has been followed and recognized in many others. (*Sewell* v. *Fitch*, 8 Cowen, 215 ; *Robertson* v. *Vaughan*, 5 Sand. S. C. R., 1 ; *Bronson* v. *Wiman*, 10 Barb., 406 ; *Donovan* v. *Willson*, 26 Barb., 138 ; *Parker* v. *Schenck*, 28 id., 38 ; *Mead* v. *Case*, 33 id., 202 ; *Smith* v. *N. Y. Central R. R.*, 4 Keyes, 194.)

The present is not one of the border cases, in which an embarrassing or doubtful question is presented, as where wheat is sold, but the labor of thrashing remains to be done (*Downs* v. *Ross*, 23 Wend., 270), or a sale of flour which has yet to be ground from the wheat (*Garbutt* v. *Watson*, 5 B. & Ald., 613), or the sale of wood or timber which requires to be cut and corded (*Smith* v. *N. Y. Central R. R.*, *supra*), nor where the defendants might procure other parties to manufacture the paper. (3 Pars. on Contracts, 52.) It was a simple naked agreement to manufacture at their own mills, and deliver at a specified price, 20,000 pounds of paper of specified sizes, no part of which was in existence at the time of making the contract. Indeed, there is no evidence that the rags and other materials from which it was to be manufactured were owned by the defendants, or were in existence, except so far as it may be argued that matter is indestructible, and that in some form they must necessarily have then existed. As to cases of this character, the course of decisions in this State has been uniform. If we desired to do otherwise, we have no choice ; we must follow them.

The judgment must be affirmed with costs.

GRAY, C. (dissenting.) I concede that prior to the decision in *Downs & Skellinger* v. *Ross* (23 Wend., 270), the contract in question would, by an adherence to the rule of construction established in this State, have been held to be a contract for work and labor, not for the sale of goods. As far back as 1820, in *Crookshank* v. *Burrell*, a contract to make and deliver the woodwork of a wagon was held to be a contract for work and labor. SPENCER, Ch. J., in delivering the opinion of the court, cited *Towers* v. *Osborne* (1st Strange, 506), which was

for the sale of a chariot, to be made, and held not to be within the statute, and *Clayton* v. *Andrews* (4 Burrows, 2101), which was upon a contract for the sale of wheat, not yet thrashed, and to be thrashed and delivered, which in *Rondeau* v. *Wyatt* (2 H. Black., 63) and in *Cooper* v *Elston* (7 T. R., 14) was held to be well decided for the reason, as he (KENYON, Ch. J.,) said in *Cooper* v. *Elston*, something was required to be done, in order to put the grain in a state in which it was contracted to be sold. ASHHURST, J., concurred, as did LAWRENCE, J., who said there was to be some alteration in the state of the commodity before it was to be delivered, and hence not an unmixed contract for the sale of the grain. SPENCER, Ch. J., in *Crookshank* v. *Burrell,* said a distinction was made between a contract for the sale of a thing existing and one not yet made and to be delivered, and that however refined the distinction might be, it was well settled and then too late to question it. The question came up again in 1828 (*Sewall* v. *Fitch*, 8 Cow., 215) upon a contract made in 1825, for the sale of 300 casks of nails, like the work of the wagon, not then wrought out, but to be made and delivered at a future day. SAVAGE, Ch. J., in delivering the opinion of the court, held, upon the authority of *Crookshank* v. *Burrell*, and the cases there cited, referring specially and with approval to the cases in support of the proposition that a sale of unthrashed grain, to be thrashed and delivered at a future day, was not within the statute, and so he held the contract for the sale of the nails to be. This construction of the statute was acquiesced in until 1840, when the case of *Downs & Skillinger* v. *Ross* (23 Wend., 270) came up for consideration. That, like the contract in *Andrews* v. *Clayton*, was for the sale of unthrashed wheat, to be thrashed and delivered. COWEN, J., in a dissenting opinion, conceded that a contract to manufacture and sell would more correctly be considered a sale within the statute, but truthfully stated that the cases referred to had construed the statute to mean a sale unmixed with a contract for labor, and insisted that they ought not, then, out of deference to the more recent decisions

in the English courts, to concede that the decisions, though characterized as absurd, were so obviously wrong that they ought then to overturn them. But BRONSON, J., with whom NELSON, Ch. J., concurred, reiterated the doctrine of the cases referred to, so far as they held that a contract for the sale of unthrashed wheat, including in the same contract, and as a part of it, an agreement to thrash and deliver it, as a part of the consideration of the price to be paid· for the wheat, was an agreement for work and labor, and not a contract of sale within the statute, and cited the more modern cases in England establishing a new judicial construction of the act, followed by the statute of George IV, chapter 14, in accordance with or declaratory of the meaning of the prior statute, as those decisions had construed it (Brown on the Statute of Frauds, § 309); and, in accordance with those decisions, showing, as he claimed, that the English courts had "got back again on the firm foundation of reason and common sense," he held the contract then under consideration to be within the statute. Among the cases he cited was that of *Garbutt* v. *Wilson* (5 Barn. & Ald., 613); *Smith* v. *Surman* (9 Barn. & Cress., 561). The former was a contract for 300 sacks of flour not then ground, to be ground and shipped at a future time; the latter was a contract for the purchase of timber, then in standing trees, at a given price per foot when they should be severed from the freehold by the vendor and measured or made ready for measurement. BAILEY, J., held that so long as the vendor was felling the trees and preparing them for delivery he was doing work for himself; and LITTLEDALE, J., whose observations cover the case now under consideration, held that where "contracting parties contemplate a sale of goods, although the subject-matter, at the time of making the contract, does not exist in goods, but is to be converted into that state by the seller bestowing work and labor upon his property or his own materials, that is a case within the statute." After Justice BRONSON had cited these cases, quoting the language of the respective judges, not only approvingly, but as authority in support of his own opinion,

he did not express himself with his usual accuracy when he said *Sewall* v. *Fitch* was not in point. If the case of *Garbutt* v. *Watson*, cited by him, was not law, as he affirmed it to be, and the opinions of the respective judges in *Smith* v. *Surman* quoted by him, which he approved, were also law and in principle to the point then under consideration, so was *Sewall* v. *Fitch*. One was a contract with a corn merchant for the sale of flour to be manufactured; the other for nails to be manufactured. If one was, as stated in *Smith* v. *Surman*, a sale of goods, by their being converted into that state by the seller's bestowing work and labor upon his own materials, so was the other. One was to be made out of wheat, and the other out of iron. The difference consists solely in the article to be made and the material out of which it is to be made, and not a whit in the principle involved. The learned judge was careful not to state that the ruling in *Sewall* v. *Fitch* could be sustained; and, from the views expressed by him, no doubt is entertained that, if a case like it in its facts had been before him, he would have overruled it. The foundation upon which it rested became so undermined by the decision in *Downs & Skillinger* v. *Ross*, and the approved opinions in the cases cited, that, while the judges then occupying the bench of that court continued to be its incumbents, and not until after the organic law of the State had undergone a change, and with it the judicial system of the State, the case of *Sewall* v. *Fitch* was not, so far as I have been able to discover, so brought to the attention of our courts as to make it a subject of comment. In 1850, it was, in the court from which this appeal came, a controlling authority. (*Robertson* v. *Vaughn*, 5 Sandf. S. C., 1, 5.) In that case, a contract for making and delivering molasses shooks and heads was regarded as within the mischiefs the statute intended to remedy, and, therefore, a contract for the sale of goods; but, as it was not distinguishable from *Sewall* v. *Fitch*, the contract was held not to be within the statute. The judge delivering the opinion observed that, if all the contracts between merchants and manufacturers for the purchase of

goods *to be thereafter manufactured* are to be excepted
from the statute of frauds, there seemed to be little
reason for retaining all those provisions of the statute, which
relate to the sale of goods to be delivered on a future day,
since it is hardly possible to imagine an exception more
arbitrary in its nature and more contrary to the policy upon
which the statute is admitted to be founded; and under the
circumstances that court thought, "that it belonged only to
the court of ultimate jurisdiction to set aside the authority of
that decision." It is not a little remarkable that the learned
court made no mention of the case of *Downs & Skillinger* v.
*Ross*, and in which the opinion of LITTLEDALE, J., in clear
conflict with the doctrine of the case of *Sewall* v. *Fitch*, was
quoted and approved. In 1854, the case of *Sewall* v. *Fitch*
was again the subject of comment and disapproved. (*Court-
right* v. *Stewart*, 19 Barb., 455, 458.) It was again the subject
of comment in each of the following cases: *Donovan* v. *Wil-
son* (26 Barb., 138); *Parker* v. *Schenck* (28 id., 38); and
*Mead* v. *Case* (33 id., 202). In *Donovan* v. *Wilson* it was
followed, though conceded to have been questioned in *Downs*
v. *Ross*, in *Johnson* v. *Wanger*, and in *Courtright* v. *Stewart*.
In *Parker* v. *Schenck* a contract to make and deliver a
double-acting pump was held, as the learned judge who deliv-
ered the opinion of the court stated, to come "within that
class of cases referred to by Judge BRONSON, in *Downs* v.
*Ross*, as cases out of the statute." A closer observation of
that case, I think, would have convinced the learned judge
that BRONSON did not refer to any case or class of cases which
he conceded to be cases out of the statute. In the prevailing
opinion in *Mead* v. *Case*, the case of *Sewall* v. *Fitch* was a
controlling authority, and no mention was made of *Downs* v.
*Ross* in the dissenting opinion. It was approved; *Sewall* v.
*Fitch* disapproved. The inharmonious views entertained and
put forth by the courts of this State, and their reluctance to
occupy the grounds established by the cases cited and approved
by Judge BRONSON and characterized by him as resting upon
the firm foundation of reason and common sense, has resulted

in bringing a question similar in principle to the consideration of the Court of Appeals. (*Smith* v. *The N. Y. Cen. R. R. Co.*, 4 Keyes, 180, 199, 200.) It arose upon a verbal contract for the sale of cord-wood, to be worked by the vendor out of a certain lot of standing trees owned by him, and delivered at a future day, at a certain price per cord, and it was held to be within the statute. Judge WOODRUFF, in delivering the opinion of the court, alluding, no doubt, to the cases in which a contract for building a carriage had been held not to be within the statute, said, in substance, that "distinction had been made, that seemed rather designed to evade the statute than to guard against the evils which the statute was designed to prevent," and that there did not seem to be any "sensible reason for holding, in reference to two verbal contracts with wagonmakers for the purchase and delivery of twenty wagons on a future time named, that one is void because one wagonmaker has the wagons on hand, and the other is valid because the other wagonmaker must manufacture them in order to their delivery at the time appointed;" and after quoting the language of BAILEY and LITTLEDALE, JJ., referred to and quoted in the opinion of BRONSON, J., in *Downs* v. *Ross* (*supra*), said he "could not assent to any case which has decided that such a contract is not within the statute." If we are, as I think, we should be governed by the case of *Downs* v. *Ross*, decided by the Supreme Court, and the case last cited so recently decided in the Court of Appeals, and the principles enunciated in each of them, the judgment in the case we are now considering should be reversed. The fact that the materials out of which the paper was to be manufactured were not designated, or may not have been in being, is quite immaterial. (*Seymour* v. *Davis*, 2 Sand. S. C. R., 239, 241.) If in the sale of an article to be manufactured, or partly manufactured out of the vendor's own materials, the proportion in which the labor to be bestowed, is to increase the value of the thing sold, is to be taken into consideration, what must the proportion be? No case can be found furnishing a test. If the article upon

which the labor is to be bestowed is *in esse*, and designated like the wheat in *Downs* v. *Ross*, or the trees in *Smith* v. *The Central R. R. Co.*, is the test, then a contract for the sale of the trees when cut into cord-wood or splinters for matches would be within the statute; for aught that appears, we are at liberty to assert, and I am inclined to think an investigation would show the assertion that the proportionate value is not remarkably unequal of working iron into nails, as in *Sewall* v. *Fitch*, or unthrashed wheat into merchantable wheat, at the price to be paid for it, as in *Downs* v. *Ross*, or wheat into flour, as in *Garbutt* v. *Watson*, or standing timber into cord-wood, as in *Smith* v. *The Central Railroad Company*, or rags or other materials into paper, as in the case under consideration. Whether the labor which the vendor is to bestow upon his own work is of greater or less value than the material upon which it is bestowed, is not such a test of the character of the contract as to change it from a contract for the sale of goods into a contract for work and labor; and, unless the principles put forth, and which controlled the decisions in *Downs* v. *Ross*, and in *Smith* v. *The Central Railroad Company*, are to give way to the overruled opinion of COWEN, J., which that learned judge based solely upon the authority of the early cases to which I have referred, and not upon any just construction of the statute, conceding, as he did, that a contract to manufacture and sell, as this is, would, more correctly, be considered a sale within the statute.

The judgment appealed from should be reversed.

All concur for affirmance, except GRAY, C., dissenting.

Judgment affirmed, with costs.