JOHN D. W. JOY *et al.*, Respondents, *against* NATHAN J. SCHLOSS *et al.*, Appellants.

(Decided April 13th, 1885.)

Goods were ordered by defendants from plaintiffs, nothing being said as to where or by whom the goods should be made, though it was understood they were not in existence ; but it did not appear that defendants expected plaintiffs themselves to manufacture the goods. Plaintiffs were agents of, and sold goods and took orders for several manufacturers of such goods, among them for a corporation of which plaintiffs were stockholders as well as sole agents ; and by this corporation the goods ordered were in fact manufactured for plaintiffs. *Held,* that this was a sale of goods within the Statute of Frauds, rather than a contract for work and labor (re-affirming the doctrine of *Millar* v. *Fitzgibbons,* 9 Daly 505).

APPEAL from a judgment of the General Term of the City Court of New York reversing a judgment of that court entered on the verdict of a jury and ordering a new trial.

The facts are stated in the opinion.

*Simon Wolf* and *W. H. Townley,* for appellants.

*Eugene H. Pomeroy,* for respondents.

VAN HOESEN, J.—The learned justice who wrote the

opinion of the General Term of the City Court of New York, said very correctly that, if as matter of fact, the plaintiffs had failed to show that the goods were to be manufactured by them, the statute would clearly apply to the contract, and the mistake that the General Term made was in assuming that the plaintiffs themselves were bound by the contract to manufacture the goods. There is not only no evidence to support such a finding, but there is conclusive evidence to the contrary.

The plaintiffs were agents for several mills that manufactured woolen and cotton goods, the Essex Mills and the Hamilton Mills being among the number. As a dry goods commission house, the plaintiffs sell goods for manufacturers and take orders for them. In February, 1883, they got from the defendants an order for two pieces of Salisbury suitings which they agreed to deliver in the following April and May. Nothing was said as to the place where or the parties by whom the goods should be made, though it was understood that they were not in existence. Any goods that corresponded to the sample, whether manufactured by a mill that the plaintiffs represented or not, could lawfully have been delivered in fulfillment of the order.

There is not a word in the testimony that gives the faintest color to the assertion that the defendants expected that the plaintiffs themselves would manufacture the goods, but yet, because it appeared in the course of the trial that the plaintiffs were stockholders of a corporation called the Essex Mills and its sole agents, the General Term of the City Court came to the conclusion that the contract required the plaintiffs themselves to manufacture the goods. Having reached that entirely unwarranted conclusion, the General Term then decides, in opposition to all the evidence, that the plaintiffs did actually manufacture the goods.

It is easy to imagine circumstances under which such a decision would operate most severely and unjustly upon the plaintiffs, for it is familiar law that a manufacturer is held liable upon an implied warranty against latent defects,

though no such liability attaches to an ordinary commission merchant (*Hoe* v. *Sanborn*, 21 N. Y. 552).

It is perfectly clear that the General Term fell into error in assuming that the plaintiffs owning some shares of stock of the corporation called the Essex Mills had a bearing on the question of the applicability of the Statute of Frauds to the contract of the parties. It was proved that the plaintiffs gave the order for the Salisbury suitings to the Essex Mills, but the contract with the defendants did not require them to do so; as I have said before, the goods could have been bought anywhere if the plaintiffs had seen fit to buy them in the market, and the defendants could not have objected that they had not been manufactured in some one of the mills of which the plaintiffs were agents.

It is obvious, therefore, that this was a sale of goods rather than a contract for work and labor, and that the case falls within the class mentioned by Judge HUNT in *Parsons* v. *Loucks* (48 N. Y. 20) when he says: " The present is not one of the border cases in which an embarrassing question is presented—as where wheat is sold, but the labor of threshing remains to be done; or a sale of flour which has yet to be ground from wheat; or the sale of timber that is to be cut and corded; nor where the defendants might procure other parties to manufacture the paper " (3 Parsons on Contracts, 7th ed., star p. 54).

*Parsons* v. *Loucks* was the precursor of *Millar* v. *Fitzgibbons* (9 Daly 506), and is a support for it, if precedent were needed to sustain a sound principle.

The order and the judgment entered upon the order of the General Term should be reversed and the judgment of the trial term affirmed, with costs.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment and order of General Term reversed and judgment of trial term affirmed, with costs.