OSWEGO FALLS PULP & PAPER CO. v. STECHER LITHOGRAPHIC CO.

(Supreme Court, Appellate Division, Fourth Department.   July 11, 1911.)

1. SALES (§ 384*)—REFUSAL TO ACCEPT DELIVERY—MEASURE OF DAMAGES.

   The measure of damages for a buyer's refusal to receive manufactured articles as agreed is the difference between the cost of manufacture and the contract price.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107;  Dec. Dig. § 384.*]

2. SALES (§ 89*)—CONTRACT—MODIFICATION BY PARTIES.

   After plaintiff, a paper manufacturer, agreed to sell a certain amount of paper board to defendant, to be delivered as provided, the parties met after a controversy as to the grade of the paper furnished, and defendant told plaintiff that he would cancel the contract, whereupon plaintiff asked for another chance to furnish the paper satisfactorily, when defendant said that any further orders must be satisfactory to defendant or they would not be received, to which plaintiff assented.   *Held*, that the original contract was modified so that the paper subsequently furnished must be satisfactory to defendant.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251–259;  Dec. Dig. § 89.*]

3. SALES (§ 168½*)—SALE ON APPROVAL.

   A buyer may not capriciously or unreasonably cancel a contract of sale, even though it was agreed that the article should be satisfactory to the buyer.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 168½.*]

4. SALES (§ 383*)—ACTIONS BY SELLER—SUFFICIENCY OF EVIDENCE—CANCELLATION OF CONTRACT.

   Evidence, in an action by a paper manufacturer for breach of contract to purchase, *held* to make it a jury question whether defendant rescinded the contract.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 383.*]

5. SALES (§ 382*)—REMEDY OF SELLER—ACTIONS FOR DAMAGES—ADMISSION OF EVIDENCE.

   In an action for damages for refusing to receive paper board sold to defendant under a contract permitting defendant to refuse the material, if not satisfactory, defendant could show the quality of the material offered, on the issue whether its refusal was because the material was unsatisfactory or for other reasons.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 382.*]

Appeal from Trial Term, Oswego County.

Action by the Oswego Falls Pulp & Paper Company against the Stecher Lithographic Company.   From a judgment for plaintiff and an order denying a new trial, and an order amending the complaint, defendant appeals.   Reversed, and new trial granted.

See, also, 133 App. Div. 938, 117 N. Y. Supp. 1143.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Werner & Harris and John Desmond, for appellant.
C. W. Tooke and D. Raymond Cobb, for respondent.

KRUSE, J.   The plaintiff, a paper manufacturer, agreed to manufacture and sell to the defendant 52 20-ton car loads of paper board,

known as bleached manila lined chip, to be delivered one car load a week commencing January 1, 1908, at $42 per ton, delivered f. o. b. Rochester, N. Y., to be of the same grade as was furnished by the plaintiff to the defendant prior to October, 1906; and it was contemplated that it was to be made according to specifications furnished by the defendant. There were other matters involved in the contract, but they are not material to the controversy here.

The plaintiff delivered 11 of the 52 cars and offered to furnish the remainder, but the defendant refused to receive the same. The defendant paid for all the material which it received and kept. A controversy arose between the parties as to whether the paper board furnished was up to grade and in accordance with the specifications, and it finally resulted in the plaintiff taking back some of the paper board, and, as the defendant claims, in the modification of the contract in the particular to which I will call attention presently.

The action is brought to recover the damages for the refusal to receive the remaining 41 cars. There are two principal questions on this appeal. One relates to the damages, and the other, whether the evidence was sufficient to show that the contract had been modified. The trial judge directed a verdict for the plaintiff, holding that the evidence was insufficient to show a modification of the contract, and that there was no question of fact as to the amount of damages. I think the case should have been submitted to the jury upon both questions.

[1] The rule of damages as finally adopted was the difference between the cost of manufacturing the product and the contract price. I think the correct rule was applied. Parsons v. Loucks, 48 N. Y. 17, 8 Am. Rep. 517; Haddam Granite Company v. Brooklyn Heights R. R. Company, 186 N. Y. 247, 78 N. E. 858. But the cost of manufacture was proven by an interested witness, and I think the circumstances were such as to make the question of the cost of manufacturing and supplying the paper board a question of fact.

Upon the other question, it appeared that the president of the plaintiff met the president of the defendant at Rochester, on May 18, 1909, when an attempt was made to adjust the differences between the parties over the kind and quality of paper board furnished. The latter testifies that he then told the president of the plaintiff that they would not continue with the contract; that they would cancel the contract and not go ahead with it any further; and that the plaintiff's president asked for another chance, and said that he would show that he could make satisfactory board, whereupon the defendant's president told him that if it went on it must be with the understanding it must be satisfactory to them, and, if it was not, they would stop just as soon as the plaintiff would send something that was not satisfactory; to which the plaintiff's president replied that would be satisfactory to him and would be all right. The plaintiff challenges this testimony by testimony and circumstances to the contrary.

[2, 3] I think if this interview actually took place, it amounted to a modification of the contract, so that the paper board furnished must be satisfactory to the defendant. Not that the defendant could capriciously or unreasonably cancel the contract (Duplex Safety Boiler

Company v. Garden et al., 101 N. Y. 387, 4 N. E. 749, 54 Am. Rep. 709; Russell et al. v. Allerton, 108 N. Y. 288, 15 N. E. 391; Crawford v. Mail & Express Publishing Company, 163 N. Y. 404, 409, 57 N. E. 616; Gearty v. Mayor, etc., of New York, 171 N. Y. 61, 72, 63 N. E. 804); and defendant does not claim it could. But as bearing upon its good faith in that regard, it offered to show the bad quality of the stock, which was excluded, improperly, as I think; and to which ruling I will again call attention a little later.

The more serious question is as to whether the defendant ever availed itself of the right it had, to terminate the contract if the paper board was not satisfactory (if in fact the contract was so modified), until after the time had expired within which the contract was to be performed. Three of the 11 car loads were paid for before the conversation took place, and 8 afterward, and of the 8 cars paid for afterward, 3 were delivered after the conversation.

There was some correspondence between the parties, after the interview, relating to modification of the price and quality of the paper board furnished. The next day after the interview the president of the plaintiff offered to reduce the price to $40 per ton, upon certain terms which need not be stated. Further correspondence was had regarding the rejected stock, and on May 25th the defendant wrote the plaintiff asking it to hold any orders it had until further notice. On the 29th day of May, the plaintiff by letter called the defendant's attention to the fact that it was considerably behind in giving specifications; that instead of giving orders to ship *four car loads per week* [month], it had not averaged much over one car per week since the first of the year, and asking it to send additional specifications for June delivery. On the next day the plaintiff again called the attention of the defendant to the fact that the rejected stock was out of the way, and asking it to give it at once specifications for six or eight cars. A few days thereafter the defendant replied that it regretted that they could not furnish shipping instructions, for reasons given over the phone that morning. On the 6th of June the defendant by letter to the plaintiff called attention to the fact that the price of stock had dropped and argued that it was for the interest of both that the plaintiff's price to it should be reduced. The plaintiff continued to call for specifications and the defendant kept putting it off, writing again July 9th that it was impossible to secure business at the prices which the plaintiff insisted upon the defendant paying for the paper board. Orders for three car loads were given by the defendant, but no more.

Along in August a controversy again arose between the parties as to the quality of the paper board, the defendant sending sample of boxes printed from the stock which had been shipped and complaining of the stock, stating that such things were very annoying to the defendant. The plaintiff replied, contending in substance that the stock was all right when it left the plaintiff's factory, and suggesting that it must have been injured afterward, which the defendant denied. No further orders were thereafter given.

In September, the plaintiff asked for orders, and the defendant replied that it was not in a position to send orders. That seems to have

been the last of the correspondence, until the following January, when the plaintiff made claim for damages, and the defendant then stated that it had had so much trouble with the quality of the stock, and the size of the rolls, that they were not able to give any further orders.

[4] While I think the evidence is quite unsatisfactory as showing that the defendant actually canceled the contract, or undertook to do so under the modified contract (if it ever was modified at all until after the expiration of the year), yet I am inclined to think that there was enough to take that question to the jury.

[5] I think that the defendant should have been permitted to show that quality of the stock, as bearing upon the question whether its refusal to receive further shipments after August was really because it was not satisfactory, or whether its refusal was unreasonable and capricious, and because the market price of paper board went down, or for other reasons than the unsatisfactory condition of the stock.

It is true that the defendant accepted the stock and paid for it, but the evidence was not offered for the purpose of establishing a claim for damages. No such claim was made in the answer or on the trial. I think, however, it was competent and proper upon the other question, and was improperly excluded.

The judgment and orders should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

