GEORGE FICKETT *versus* FREDERICK SWIFT.

The declarations of a party to the record, *or of one identified in interest with him*, are, as against such party, admissible in evidence.

The law, in regard to this source of evidence, looks chiefly to *the real parties in interest*, and gives to their admissions the same weight as though they were parties to the record.

In an action against one partner, the declarations of another partner are admissible.

A nonsuit ought not to be ordered, though the presiding Judge may have drawn proper inferences from the testimony, and arrived at a correct result, if the facts were such as might justify a jury in coming to a different conclusion without danger of their verdict being set aside as against the weight of evidence.

On EXCEPTIONS from *Nisi Prius*, HOWARD, J. presiding.

ASSUMPSIT, to recover a balance claimed to be due the plaintiff from the defendant as part owner of the ship Knickerbocker.

The facts sufficiently appear in the opinion of the Court.

*Willis & Son & W. P. Fessenden*, for defendant.

The nonsuit was rightly ordered, because:—

1. From the evidence, no contract ever existed between the plaintiff and defendant.

2. If any contract existed on the part of the defendant to pay the claim of the plaintiff, it was a contract to pay the debt of another, and not being in writing is therefore invalid. R. S., c. 136, § 1.

3. The purchaser or mortgagee of a chattel is not liable to pay the bills which may have accrued on its account before the purchase. 15 Mass. 477; 17 Pick. 441; 6 Maine, 474; 18 Maine, 132; 20 Maine, 213.

4. The letters of George H. Blanchard, signed with the firm name of "F. Swift & Co.," are inadmissible in this action against F. Swift alone, and also the bills of sale to F. Swift and George H. Blanchard, they having been delivered long after the contract was made between Ambrose Scammon & Co., and the plaintiff.

*Shepley & Dana,* for plaintiff.

1. This cannot be considered as a contract to answer for the debt of another, and as such required by the statute of frauds to be in writing. It was an original agreement with Scammon & Co., and constituted a part of the consideration to be paid for the ship. *Hargreaves* v. *Parsons,* 13 M. & W., 570; *Eastwood* v. *Kenyon,* 11 A. & E., 446; *Thomas* v. *Cook,* 8 B. & C., 728.

2. The whole course of conduct of Swift & Co., shows that they assumed this contract in terms, and adopted its provisions.

3. The declarations of the co-partner of the defendant were clearly admissible.

CUTTING, J.—The plaintiff claims a balance to be due him " on account of blocking the defendant's ship."

It appears from the testimony of George W. Cutter, *that* he was engaged by the owners to superintend the building of the ship in 1853 and 1854; *that* her keel was laid in June of the former, but the vessel was not completed until the latter year, and after her arrival in New York; *that* Ambrose Scammon & Co. commenced building, who hypothecated her to the defendant in July, 1853, and in November of that year, transferred one half to the defendant and one George H. Blanchard, and in January, 1854, the other half, by bills of sale, the purchasers giving bonds to re-convey upon certain conditions; *that* after this the witness continued, as *agent for those interested,* in making contracts for the work to be done and materials to be furnished and had the general oversight; *that* while so acting, *he received directions from those interested* in the ship; *that* sometime in the spring or summer of 1853, he made a contract with the plaintiff to furnish the blocking, which was received the latter part of 1853, and first part of 1854; *that* the defendant and Blanchard had given him directions as to the manner of completing the ship after their interest in her was acquired; *that* the defendant wanted witness to draw on him for as small amounts as he could towards paying the bills at the eastward against the ship, before getting her to New

York, where he said he could more readily obtain money, and promised then to let him have money to settle some bills which were to be paid as soon as the ship was ready for sea, among which was the plaintiff's; *that* when he made the contract with the plaintiff, in 1853, he was the agent for the owners and was acting in such capacity; *that* it was a part of the agreement on the part of the defendant and Blanchard, when they took the bill of sale, that they were to furnish what money was wanted to settle the bills against the ship; *that* all the bills, except those in New York, were contracted in the name of Scammon & Co.; *that* he don't know as Swift & Co. authorized him directly to make contracts with any one; *that* after they became interested in the vessel, they knew he was acting as agent for her, and dealt with him as such, giving directions as to the manner in which they wished her to be completed.

The plaintiff then produced the bills of sale testified to by Cutter, which were made to Frederick Swift and George H. Blanchard, "composing the firm of Frederick Swift & Co."

Also the letter of Swift & Co. to the plaintiff of Dec. 9, 1853, of which the following is an extract: —

"We have wrote you in regard to sending us some blocks, which our Mr. Blanchard was speaking to you about when in Portland, and a short time since sent you an order for the same, and have not heard that you were in the land of the living."

Stephen C. Munsey testified, that he made the sails for the ship under contract with Cutter, acting as the agent for Scammon & Co. on June 28, 1853; *that* in August of that year, he gave a schedule of what he wanted to Swift & Co. who were represented by Blanchard; *that* after he got through, he asked Blanchard, if Swift & Co. owned any part of the ship, who replied, "We own the top of the ship;" said they were going to furnish the top, the out-fit, and every thing beyond the hull.

The foregoing is the substance of the evidence introduced by the plaintiff, and which the presiding Judge ruled insufficient to maintain the action and ordered a nonsuit. A pre-

liminary question arises as to the admissibility of Blanchard's acts and declarations. The letter of Dec. 9, 1853 was admitted to be in his handwriting, and that he was the co-partner of the defendant. And whether the copies of the bills of sale were admissible or not becomes immaterial, since their contents were disclosed by Cutter without objection. We assume it then to be proved that Blanchard was the partner of the defendant. And the general doctrine *is*, that the declarations of a party to the record, or *of one identified in interest with him,* are, as against such party, admissible in evidence. The law, in regard to this source of evidence, looks chiefly to *the real parties in interest,* and gives to their admissions the same weight, as though they were parties to the record. 1 Greenl. on Ev. § § 171, 180.

Upon the evidence legally admitted, there arose a question of fact within the province of the jury to ascertain and determine, under proper instructions in matters of law, whether the defendant was liable for the price of the articles furnished. He would be so liable, if there was any contract express or implied between him and the plaintiff. This may depend upon the fact, whether Cutter was acting as the agent of Scammon & Co. solely, in making the contract, or as the agent of the defendant as one interested in building the ship, or whether the defendant, as owner and furnisher of "the top," was not responsible for all necessary tackle and appendages. The presiding Judge may have drawn the proper inferences, and conclusions, and arrived at a correct result; but in so doing he encroached upon the province of the jury, who might have found the facts to have justified a different conclusion, without much danger of their verdict being set aside as against the weight of evidence.

The evidence presents another question which might possibly have authorized a verdict for the plaintiff. We refer now particularly to the letter of Dec. 9, 1853.

Assuming, as the defendant contends, that the original agreement to furnish the blocks was made with Cutter as the sole agent of Scammon & Co., still, inasmuch as it was for the *de-*

*livery*, and not for the *manufacture* and delivery of blocks which may have been manufactured at the time, it was a contract of sale, and is within § 4 of the statute of frauds, as was decided in *Hight* v. *Ripley*, 19 Maine, 137.

Now, were the articles delivered before the date of that letter, or were they delivered subsequently and in pursuance of the request therein contained? If the latter, then the defendant might have been liable under an implied contract. The evidence upon this point, as to the time of delivery, is somewhat conflicting. The account annexed purports to have been made on Sept. 25, and for a balance then due, which probably was at the date of the writ, Sept. 25, 1854. Cutter testifies that "the blocking was received in the latter part of 1853 and the first part of 1854;" and the letter implies, that at its date, it had not then been received.

*Exceptions sustained. The case to stand for trial.*

TENNEY, C. J., RICE, HATHAWAY, and GOODENOW, J. J., concurred.