### SAMUEL P. PITKIN ET ALS. *v.* ASA NOYES.

If a contract be essentially for the sale of goods, whether they are then manufactured or not, it is within the statute of frauds; but where the labor and skill of a workman are of the essence of the contract, the statute does not apply, although they are to be expended in the production of goods and chattels, and from the workman's own raw materials.

The same doctrine will apply to an agreement to raise three acres of potatoes and deliver them to the other party, at a fixed price per bushel, the inquiry being whether it was of the essence of the agreement that the contractor should himself raise the potatoes.

The compromise of doubtful and conflicting claims, understood so to be by the parties, is a good and sufficient consideration to uphold an agreement, although it would be otherwise if the claim was utterly without foundation, and known to be so.

ASSUMPSIT, for not delivering potatoes in 1864, which defendant agreed to sell to plaintiffs.

James A. Pitkin, Lovering and others were partners engaged in the manufacture of starch at Colebrook until James A. Pitkin died, in the summer of 1863. After his death the business was carried on by his executors and the surviving partners.

In the spring of 1863 James A. Pitkin, as partner, made a verbal bargain with the defendant that, in that year, the defendant should raise three acres of potatoes and deliver them at the starch mill for twenty cents a bushel. Upon the question whether the bargain was for the same thing to be done at the same price in 1864, as well as in 1863, the evidence was conflicting. The defendant, in 1863, raised three acres of potatoes and delivered them at the mill; and part of them, at least, were delivered before any doubt or controversy was raised as to the price.

The plaintiff's evidence tended to show that in 1863, after the defendant had delivered the three acres of potatoes raised by him that year, the plaintiffs, executors of Pitkin, raised some question about paying twenty cents a bushel for them, claiming that the contract was not binding because it was not in writing, and offering to pay eighteen cents a bushel; that the plaintiffs offered to pay the defendant twenty cents a bushel if defendant would raise three acres of potatoes in 1864 and deliver them to the plaintiffs at the mill for twenty cents a bushel; that this offer was accepted by the defendant; that plaintiffs paid twenty cents a bushel for the potatoes delivered in 1863, and the bargain for 1864 was concluded about January 30, 1864; and this action was brought for not delivering three acres of potatoes in 1864.

The court overruled a motion for a nonsuit, and defendant excepted.

The court instructed the jury that if there was a controversy between the parties as to the price to be paid for the potatoes delivered in 1863 —the plaintiffs claiming that they were not bound by the agreement between Pitkin and defendant, on the ground that it was not in writing, and offering to pay eighteen cents a bushel while the defendant claims twenty cents—and if that controversy was settled by a new agreement that plaintiffs should pay twenty cents for 1863 and 1864, and that defendant should raise and deliver three acres of potatoes in 1864, and if that agreement was performed by plaintiffs, it was a valid contract and defendant was liable for not delivering the potatoes in 1864. To these instructions the defendant excepted.

The jury disagreed, and on the motion of the defendant, the court reserved this case for the purpose of determining questions which will arise at another trial.

*Ladd,* for plaintiffs.

I. The bargain concluded about January 30th, 1864, between the defendant and the new firm composed of the surviving partners of the old one, and the executors of James A. Pitkin, was not within the statute of frauds; and the mutual promises were sufficient consideration each for the other.

1. It was to be performed within a year.

2. It cannot properly be treated as a sale of goods; nothing was then in existence, which could be the subject of sale. It was an undertaking by defendant to furnish three acres of ground and sufficient labor in its cultivation to raise, harvest and deliver from it a crop of potatoes;

and on the part of the plaintiffs to take the potatoes so raised and pay twenty cents a bushel for them. *Crookshank* v. *Russell*, 18 Johns. 57; *Downs* v. *Ross*, 23 Wend. 270; *Sewell* v. *Fitch*, 8 Cowen 219; *Bronson* v. *Wiman*, 10 Barb. 406; *Donavan* v. *Wilson*, 26 Barb. 138; *Bennett* v. *Hull*, 10 Johns. 364, and cases cited in a note; *Mixer* v. *Howarth*, 21 Pick. 207; *Seymour* v. *Davis*, 2 Sandf. 239: *Spencer* v. *Cone*, 1 Met. 238; *Mattison* v. *Westcott*, 13 Vt. R. 261; *Allen* v. *Jarvis*, 20 Conn. 38; *Cummings* v. *Dennett*, 26 Maine 401; Browne on Statute of Frauds, sec. 308.

II. But should the court adopt a rule on this subject at variance with that which seems to be sustained by the general current of authority at least in New England and New York, and hold that this contract was within the statute of frauds, then we say the case shows there was a controversy as to the price to be paid for the potatoes of 1863; and the settlement of that controversy in the way shown by the case was a consideration paid by the plaintiffs and accepted by the defendant by way of earnest to bind the bargain, which takes it out of the operation of the statute.

Should it be said that the plaintiffs, after the delivery of the potatoes, were under a legal obligation to pay the price at which they were contracted to the old firm, and that the discharge of such obligation would therefore be no consideration to support a new contract, we deny that any such obligation rested on these plaintiffs. The old firm was dissolved by the death of James A. Pitkin, and had ceased to exist at the time the potatoes of 1863 were hauled to the starch mill. Had the defendant resorted to an action he must have sued the surviving partners and could not have maintained a suit against the new firm, composed of the surviving partners of the old one, and the executors of James A. Pitkin. The transaction, in fact, amounted to exactly this: the new firm settled a very doubtful claim against the surviving partners of the old one by paying two cents more than the market price for the potatoes of 1863, and the defendant, in consideration of a considerable sum of money thus received by him, entered into the new contract for 1864.

*Ray*, for defendant.

The verbal bargain with James A. Pitkin was void under the statute of frauds, until a delivery of some part of the potatoes was made by defendant in the fall of 1863.

Such delivery was made in pursuance of the original bargain and made the bargain valid so far as it related to the potatoes of 1863.

The bargain was void as to the potatoes of 1864, if any such were included in the trade with James A. Pitkin, because it was not to be performed within the space of one year.

If the original contract related to the potatoes of both years, instead of 1863 then it is divisible, and should be treated as two separate and independent contracts. The court will give effect to that part which is *not* within the statute of frauds under such circumstances.

The most recent and best considered cases treat such a transaction as that disclosed in this case, as a sale of goods rather than a contract for labor and materials. Browne on Frauds, chap. 14, sections 300–308; *Tisdale* v. *Harris*, 20 Pick. 13; *Mixer* v. *Howarth*, 21 Pick. 207; *Baldwin* v. *Williams*, 3 Met. 367; *Gardner* v. *Joy*, 9 Met. 179; *Lamb* v. *Crafts*, 12 Met. 356; *North* v. *Forest*, 15 Conn. 404; *Atwater* v. *Hough*, 29 Conn. 508; *Calvin* v. *Williams*, 3 Harr. and Johns. 38; *Wilks* v. *Atkinson*, 6 Taunton, 11; *Garbut* v. *Watson*, 5 B. & A. 613; *Smith* v. *Surnam*, 9 B. & C. 561; *Watts* v. *Friend*, 10 B. & C. 446.

The promise alleged was without consideration. Plaintiffs were under a legal obligation to pay twenty cents per bushel for the potatoes of 1863. The performance of that obligation is not a sufficient consideration to support the promise. The payment of the twenty cents per bushel was no extra detriment to the plaintiffs, and no extra benefit to the defendant. It was merely payment of a just debt already due from plaintiffs to the defendant, 1 Parsons on Con. 363, cases cited in note (*ss*), *Smith* v. *Bartholomew*, 1 Met. 276–278; *White* v. *Bluett*, 24 E. L. & E. 434; *Parker* v. *Baylis*, 2 Bos. & Pul. 73; *Heathcote* v. *Crookshanks*, 2 T. R. 24.

BELLOWS, J. If the bargain in the spring of 1863 was for the potatoes of that year, and also for the year 1864, it would be within the statute of frauds, as to the potatoes of the last year at least, as an agreement not to be performed in one year. *Emery* v. *Smith*, 46 N. H. 151. The question then is, whether a valid agreement for the crop of 1864 was made in January of that year; and we propose to inquire in the first place whether such a contract as is stated in the testimony of the plaintiff is to be regarded as a contract for work, labor and materials, or a contract of sale of the crop of potatoes. If the former, it is not within the statute of frauds, but if the latter it is.

It is manifest from the nature of the case that it must be very difficult to draw a line of distinction between these two classes of contracts. In some instances the distinctions must be very nice, and it is to be expected that we should find the authorities not altogether harmonious.

It is now settled, however, that a contract for the sale of goods is not without the statute because it is executory, and it is well settled that a contract for work and labor and materials found is not within the statute.

In the early English cases it was held that a contract for the sale of articles to be afterwards manufactured and delivered was not within the statute; as in *Towns* v. *Osborne*, 1 Str. Rep. 506, where defendant bespoke a chariot; and so of a contract to deliver wheat not then threshed, as in *Clayton* v. *Andrews*, 4 Burr. 2101. In both of these cases the decision went upon the ground that the contract was executory. But these cases were soon after qualified by decisions holding that contracts of sale though executory were within the statute. *Rondeau* v. *Wyatt*, 2 H. Blk. 63, and *Cooper* v. *Elston*, 7 T. R. 14; and yet the results reached in *Towns* v. *Osborne* and *Clayton* v. *Andrews* have been in

some cases recognized as correct, although upon a different ground; namely, that the articles were not existing at the time of the bargain, and so incapable of delivery and acceptance; as in *Graves* v. *Buck*, 3 M. & L. 178; 2 Starkie Evi. 608, and cases cited in note C.

But in *Garbut* v. *Watson*, 5 B. & Ald. 613, it was held that a contract to sell 100 sacks of flour at a price fixed, to be ready in three weeks, was within the statute, though the flour was not then ground.

Of the same character is *Smith* v. *Surnam*, 9 B. & C. 561, where it was decided that a bargain for certain timber trees growing on the owner's land at a fixed price per foot, was a contract for the sale of goods, and within the statute, although to be cut afterwards by the seller; holding that when cutting them he was doing work for himself and not for the buyer. Littledale, J., holds that where the contracting parties contemplate a sale of goods, although at the time of making the contract the subject matter does not exist as goods, but is to be converted into that state by the seller's bestowing work and labor on his own raw materials, that is a case within the statute; and he says further that it is sufficient, if at the completion of the contract the subject matter be goods, wares and merchandise; and Parker, J., says the true question in such cases is whether the contract be substantially a contract for the sale of goods, or for work and labor and materials found.

These two last cases modify materially the doctrine of *Graves* v. *Buck*, and the earlier cases of *Towns* v. *Osborne* and *Clayton* v. *Andrews*, and hold that it is not essential that the goods be capable of delivery at the making of the contract, to bring it within the statute. So the fact that the goods are to be transported to another place and there delivered does not take the case out of the statute. *Kent* v. *Hutchinson*, 3 B. & P. 233, and *Astry* v. *Emery*, 4 M. & S. 262.

The weight of American authority is in accordance with the doctrine of *Garbut* v. *Watson*, 5 B. & Ald. 613, and *Smith* v. *Surnam*, 9 B. & C. 561, that the mere fact that the goods are not, at the making of the contract, in the condition in which they are to be when delivered, does not take a case out of the statute.

If, however, a person contract to manufacture and deliver at a future time certain goods, at prices then fixed, or at reasonable prices, the essence of the agreement being that he will bestow his own labor and skill upon the manufacture, it is held not to be within the statute. If on the other hand the bargain be to deliver goods of a certain description at a future time, and they are not existing at the time of the contract, but the seller does not stipulate to manufacture them himself or procure a particular person to do so, the contract is within the statute. The distinction is that in the one case the party stipulates that he will himself manufacture the article and the buyer has the right to require him to do it, and cannot be compelled to take one as good or even better if made by another, while in the other case the seller only agrees to sell and deliver the article, and is under no obligation to make it himself, but may purchase it of another.

This is the doctrine laid down by Shepley, J., in *Hight* v. *Ripley et al.*, 19 Maine Rep. 137, where the distinction between the cases is well

explained, and the doctrine has been since followed by the Maine courts, *Abbott* v. *Gilchrist et al.*, 38 Maine 260 ; *Pecket* v. *Swift*, 41 Maine 68 ; and *Edwards* v. *Grand Trunk Railway*, 48 Maine 379. This doctrine of *Hight* v. *Ripley* is recognized as sound by Prof. Parsons in his work on Contracts, 2d vol. 334, where in a note the authorities are collected.

This distinction is also recognized in Massachusetts. In *Gardner et al.* v. *Joy*, 9 Met. 179, Shaw, C. J., lays it down thus : "If it is a contract to sell and deliver goods, whether they are then completed or not, it is within the statute. But if it is a contract to make and deliver an article or quantity of goods it is not within the statute." Here the contract was for one hundred boxes of candles by a manufacturer, and although the candles were not then made it was held that the contract was within the statute, there being no stipulation by the manufacturer to make them.

In *Mixer* v. *Howarth*, 21 Pick. 205, it was held that an agreement by defendant to build a carriage for the plaintiff, or to finish one for him from materials partly wrought, was not within the statute ; it being held by Shaw, C. J., that a contract to sell an article then existing, or which the vendor usually has for sale in the course of his business, is within the statute ; but it is otherwise if the agreement by a workman be to put materials together and construct an article for the employer, whether at an agreed price or not.

The same general doctrine is recognized in *Spencer* v. *Cone et al.*, 1 Met. 283, holding that an agreement to make certain machines for another at a specified price is not within the statute, but an agreement for labor and materials. The distinction is also recognized in *Waterman* v. *Meigs et al*, 4 Cush. 499, and in *Lamb* v. *Crafts*, 12 Met. 356.

In New York the distinction is fully recognized between an agreement for the sale and delivery at a future day of articles then existing, and an agreement to sell and deliver articles not thus manufactured, but to be made afterwards, holding that the latter are contracts for work and labor and materials found, and not within the statute ; but the New York cases do not appear to mark the difference between the contract of a party to manufacture and deliver an article, and his contract to deliver it merely, whether made by himself or another. A contract of sale though executory is held to be within the statute. *Bennett* v. *Hall*, 10 Johns. 363 ; *Jackson* v. *Covert*, 5 Wend. 141.

The cases that hold that a contract to make an article is not within the statute are *Crookshank* v. *Burrill*, 18 Johns. 57, which was an agreement to make the wood work of a wagon ; *Sewall* v. *Fitch*, 8 Cow. 215, which was a contract for nails of a particular manufacture, but not then made ; *Robertson* v. *Vaughn*, 5 Sanford, 1, which was a contract to make and deliver one thousand molasses shooks at a fixed price, which was decided not to be within the statute, upon the authority of *Sewall* v. *Fitch*. Duer, J., who gave the opinion, thought the case to be within the mischiefs of the statute and was disposed to question the earlier cases.

So is *Brown* v. *Winan*, 10 Barb. 406, where it was held that a

contract for flour to be ground from wheat, bargained for, but not then received, is not within the statute.

So in *Donovan* v. *Wilson*, 26 Barb. 138, there was a contract to deliver at a future day an article to be manufactured by defendant, and it was held not to be within the statute.

So is *Parker* v. *Schenck*, 28 Barb. 30, and *Mead* v. *Case*, 33 Barb. 202, where the agreement was to finish a monument, with the inscription, and deliver it to the other party.

In most of the cases the party himself agreed to manufacture the goods, and that would bring them within the doctrine of *Hight* v. *Ripley*, 19 Mass. 137, before cited, although the distinction does not seem to be adverted to.

In *Downs* v. *Ross*, 23 Wend. 270, a contract for the sale of seven hundred bushels of wheat, part of which was yet to be threshed and the rest to be cleaned more thoroughly, and all to be delivered in six days at a price fixed, was held to be a contract for the sale of goods, and within the statute; Cowen, J., dissenting upon the ground that the question was settled by the early English and New York cases; but saying that were it an open question he would not deny that a contract to manufacture and sell would more correctly be considered a sale within the statute. This case falls within the principle of *Garbut* v. *Watson*, 5 B. & Ald. 613, and *Smith* v. *Surnam*, 9 B. & C. 561, before cited, where something was to be done by the seller to perfect the goods before delivery.

In Connecticut it was held that an agreement to deliver to a party one hundred sewing machines of a certain description, at a time and place designated, on condition that a part of them not then completed were finished in season by a third person who worked in seller's shop and with his materials, was a contract of sale, and not for the manufacture of the machines, but even if it were otherwise as to the part not completed, sixty-four in number, still as the contract was entire and as it was clear that in respect to the thirty-six it was a sale, the whole it was said must be regarded as within the statute. *Atwater* v. *Hough*, 29 Conn. 508.

In *Phips* v. *McFarlane*, 3 Minn. 109, there was an agreement to furnish materials, and fit them for a steam mill, which was portable; and it was held that it was not a contract of sale; but it blends together the price of the thing, and compensation for work and labor and materials, and is not within the statute.

In our own courts in *Gilman et al.* v. *Hill*, 36 N. H. 311, where there was a contract made in August to sell to the plaintiff all the sheep pelts taken off by the seller who was a butcher, between the first of July and the first of October, it was held that in respect to all, as well those not then taken off as those that were ready for delivery, it was a contract of sale of goods, and not for work and labor, and was within the statute.

In 2 Kent's Commentaries 504 and 511, note *b*, the earlier English doctrine is recognized that if the article sold existed at the time *in solido*, and was capable of delivery, the contract was within the statute;

but otherwise if it was to be afterwards manufactured or prepared for delivery by work and labor.

And much the same is Story on Con. sec. 787 and note. In Browne on Frauds, this subject is well considered, and the conclusion reached is expressed in section 308, that if the contract be essentially a contract for the article manufactured or to be manufactured, the statute applies to it; but if it is for the manufacture, for the work, labor and skill, to be bestowed in producing the article, the statute does not apply.

Upon the whole we are satisfied that if the contract be substantially for the goods, it is within the statute, whether they are then manufactured or not; but it is otherwise if the contract be to manufacture and deliver the goods, that is, if the labor and skill of the seller is stipulated for and makes part of the contract.

It is quite obvious that the labor and skill of a workman may be bargained for in this way as well as in any other—his compensation being in the price of the article he makes; and the only question in the particular case is whether the skill and labor of that workman was especially contracted for, so that the employer was entitled to that, and could be obliged to take no other.

In many cases, then, there could be no difficulty in determining whether the labor and skill of the particular person was of the essence of the contract, or whether it was, in the contemplation of the parties, substantially a sale.

If an artist contract to paint the portrait of another, although he is to find the canvas and paints, it would readily be conceded that the substance of the contract was for the skill and labor of the particular artist. So if a printer contract to print a book for an author, though he is to furnish the paper and ink, as held in *Clay* v. *Gates*, 1 H. & N. 73. So if a carpenter agree to erect a building for another upon his land and find all the materials, it is a contract for work and labor and materials. *Courtright* v. *Stewart*, 19 Barb. 455. So it would be if a person carry cloth to a tailor who agrees to make a coat for him, even if the tailor is to find the trimmings.

The contract may be for work and labor simply, for work and labor and materials, or for the sale and delivery of goods, wares and merchandise. In respect to the two last the line of separation must often be indistinct and difficult to trace; and we are not able to discover any established rule or criterion by which to distinguish them readily.

The rule established in New York, namely, that, if the goods contracted for are not then in existence but are still to be manufactured, it is to be considered as a contract for work and labor, originated at an early period in a disposition of the English courts to limit the operation of the statute of frauds, and must obviously exclude from the operation of that statute a large class of cases that are within its mischiefs, and at the same time are, in substance, contracts of sale.

On the other hand the doctrine of Littledale, J., in *Smith* v. *Surnam*, 9 B. & C. 561, is that if the parties contemplate a sale of goods, although the subject matter at the time of making the contract does not exist in goods, but is to be converted into that state by the seller be-

stowing work and labor on his own raw materials, it is a case within the statute—holding that it is sufficient, if at the time of the completion of the contract the subject matter be goods, wares and merchandise; and this general doctrine seems to be recognized in *Watts* v. *Friend*, 10 B. & C. 446, per Lord Tenterden. So in Ellis, Best & Smith, Excheq. Rep., 272, (23 U. S. Dig. 277,) it was held that a contract to make a set of artificial teeth, and fit them to the mouth of the other party who died before they were completed, was a contract for the sale of goods and within the statute.

This doctrine of Littledale, J., brings us ·round to the question whether in the contemplation of the parties the contract was substantially a contract for the sale of goods, or for work and labor.

In Massachusetts a distinction is made between a contract for the sale and delivery of articles which the seller is habitually making, and a contract to make an article pursuant to the agreement, the former being regarded as a contract of sale, but the latter not. *Lamb* v. *Crafts*. 12 Met. 353. This must be because it was supposed to bear on the question whether the stipulation that the party himself should make the goods was of the essence of the contract, and so a contract for work and labor.

As a rule of law, however, it does not strike us as affording a very satisfactory distinction between a contract of sale, and a contract for work, labor and materials. If it be of the substance of the contract that the manufacturer shall himself apply his own labor and skill to the manufacture of the goods for the buyer, who is not bound to receive any other, it can make no difference whether the goods are habitually made by such manufacturer or not. If he does habitually make such goods for sale, he may nevertheless contract to bestow his own labor and skill in making them for a particular person, and the real inquiry is whether in a given instance he has done so or not.

In the absence of explicit and distinct terms, the circumstances may be such as to indicate clearly that the labor and skill of the particular artist was especially stipulated for, as in the case of an agreement to paint a portrait, to execute a marble statue, or any other work of high art. In such cases, and especially where the materials used in the work are of slight importance compared with the labor and skill of the artist, it might well be supposed that the skill and labor was of the essence of the contract, and such seems to have been the opinion of Pollock, C. B. in *Clay* v. *Gates*, 1 H. & N. 73, before cited.

On the other hand if the contract be for goods which are usually in the market, and there is nothing in the terms used or in the nature of the case to indicate that the labor and skill of the contractor was stipulated for especially, it must be deemed a contract of sale and within the statute.

If the article to be manufactured or the crop to be raised is not a marketable commodity, but of value chiefly to the one who contracts for it, that circumstance has been supposed to indicate that the labor and skill of the other was bargained for. Browne on Statute of Frauds, sec. 308, citing *Cason* v. *Cheely*, 6 Geo. Rep. 554, which is based

upon such a distinction. Whether such a distinction as a rule of law is well founded or not, it certainly presents a strong equity in favor of holding such cases as not to-be within the statute.

In the case before us the question is whether the essence of the contract was a sale of the expected crop of potatoes at twenty cents a bushel, or a stipulation for defendant's work and labor and materials in producing them. The proof is of an agreement by defendant to raise three acres of potatoes in 1864, and deliver them at the plaintiffs' mill at twenty cents the bushel; was it, then, an essential part of the contract that the defendant should himself raise the potatoes? If it was, it would seem from the principles stated that the contract cannot be regarded as a sale.

In the case of *Gardner et al.* v. *Joy*, 9 Met. 177, the plaintiffs inquired of the defendant what he would take for sperm candles, and upon being told, said they would take one hundred boxes, which was assented to ; defendant who was a manufacturer then said they were not then manufactured, but he should or would manufacture and deliver them in the course of the summer. The court held this to be a contract for the sale of goods within the statute ; and that what was said as to the subsequent manufacture had reference only to the time of delivery, and that the delivery of good merchantable candles of another person's manufacture would have been a compliance with the contract.

In the case before us was the defendant bound himself to raise three acres of potatoes, or only to deliver good merchantable potatoes in quantity equal to the ordinary product of three acres? Or in other words was the stipulation in respect to the three acres introduced only to determine the quantity to be delivered, and not to oblige the defendant to raise them ?

It is obvious that the plaintiffs might have an interest in stipulating that defendant should himself raise the potatoes, and as the terms of the contract are explicit that he should do so, we cannot be justified, as the evidence now stands, in holding that this is not an essential part of the agreement.

We are aware of the case of *Watts* v. *Friend*, 10 B. & C. 446, before cited. There A. agreed to supply B. with a quantity of turnip seed, and B. agreed to sow it upon his own land and sell the crop to A. at £1, 1s. per bushel, and it was held that in good common sense this must be considered as substantially a contract for goods and chattels, for the thing agreed to be delivered would at the time of delivery be a personal chattel.

The reason assigned here for this decision would apply to all cases where the labor and materials employed were to result in goods and chattels, the price of which was to be the measure of compensation, and without regard to the question whether in the contemplation of the parties labor and skill were especially contracted for or not, and for the reasons already suggested, we are not prepared to assent to that view.

Upon the whole our conclusion on this point is that as the question is a mixed one of law and fact, it will be proper to leave it to the jury, in view of all the circumstances of the case, to find whether the contract

was essentially for the work and labor and materials of the defendant in raising the potatoes, so that he was bound himself to raise them ; or whether it was substantially a sale of potatoes, which he might raise himself, or procure by purchase or otherwise. If it was the former it would not be within the statute of frauds ; but if the latter it would be.

Another question raised is in regard to the consideration for defendant's agreement. If the plaintiffs agreed to take and pay for the crop of potatoes at the price fixed, that of course would be a sufficient consideration. We are of the opinion also, that the compromise of doubtful and conflicting claims is a good and sufficient consideration to uphold an agreement. 1 Parsons on Con. 364 ; Chitty on Con. sec. 42, and note 1 and cases; *Longridge* v. *Dowille*, 5 B. & Ald. 117 ; *Crowther et al.* v. *Farrer*, 15 A. & E., N. S., Queen's Bench Rep. 677 ; *Barlow* v. *Ocean Ins. Co.*, 4 Met. 270 ; *Tuttle* v. *Tuttle*, 12 Met. 551 ; *Crans* v. *Hunter*, 28 N. S. 389 ; *Gates* v. *Shatts*, 7 Mich. 127 ; *Union Bank of Georgetown* v. *Geary*, 5 Peters 99 ; *Fleming* v. *Ramsay*, 46 Penn. St. Rep., 252 ; *Parker* v. *Way*, 15 N. H. 45 ; *Burnham* v. *Dunn*, 35 N. H. 560.

The law indeed highly favors the compromise of doubtful claims ; but the surrender or discharge of a claim which is utterly without foundation and known to be so, is not a good consideration for a promise ; *Kidder* v. *Blake*, 45 N. H. 330, and cases cited ; but it is otherwise if the claims are doubtful and so understood by the parties, and in such a case the consideration will not be defeated by showing that in fact no valid claim really existed.

In the case before us it does not appear that there was any doubt about the contract for the first year, and if not, an agreement to perform it would be no valid consideration for a new promise. What the evidence on that point was, however, we do not know and the only question here is as to the law in such cases.

*Case discharged.*