## HARDELL v. McCLURE and WILLIAMS.

1. SALE—STATUTE OF FRAUDS.—All contracts for the sale of goods, etc., to the value of $50 and upwards, notwithstanding the goods may be intended to be delivered at some future time, or may not, at the time of such contract, be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery, are within the statute of frauds, and void. Accordingly a verbal contract for the sale and delivery of wheat, which was to be reduced to writing on the following day, but was not, and the wheat being (in part at least) unthreshed, *held*, within the statute, and void, no part of the purchase price having been paid, and the buyer not having received any part of the wheat.

(1 *Chand.* 271.)

ERROR to the Circuit Court for *Milwaukee* County.

This was an action of assumpsit to recover damages for the non-performance of a verbal contract for the sale and delivery of a quantity of wheat, by the defendant, to the plaintiffs. The defendant was, by the agreement, to deliver to the plaintiffs the wheat in question at the Prairieville mills. At the time of making the contract, it was also agreed that the parties should meet the next day and reduce the contract to writing ; but the plaintiffs did not appear at the time appointed, and it was never reduced to writing, and no part of the purchase money was at any time paid, nor any part of the wheat delivered.

On the trial in the court below, the plaintiffs proved that at the time of making the contract, a part of the wheat agreed to be sold was not threshed, and on the part of the defendant it was proved that all the wheat he had at the time of making the contract was threshed.

On committing the cause to the jury, the counsel for the matter defendant requested the court to charge the jury as a of law :

1. That the wheat existing *in solido* at the time the contract was made, and not having to be raised or manufactured, and though unthreshed, it was a contract within the statute of frauds, and the plaintiffs could not recover.

2. That if, in the agreement, it was understood that the contract should be reduced to writing the next day, and if the plaintiffs did not attend, as agreed, to reduce it to writing, and the same was never so done, that then the contemplated contract was never concluded or completed, so as to give it effect, and could not be enforced in law.

Which instructions the court refused to give, but did not instruct the jury that in case, by the negotiation, the contract was not to be complete until it should have been reduced to writing, then, and in that case, there was no contract at all until reduced to writing. But that a contract may have been

Hardell vs. McClure et al.

made and completed, although at the time there was an agreement to reduce it to writing; that a failure to reduce it to writing, would not avoid the verbal agreement already made, and that it was for the jury to say, whether the agreement was completed or not, without being reduced to writing.

To this charge and instruction the counsel of the defendant excepted.

The jury found a verdict for damages against the defendant, and the cause comes here, on error upon the exceptions taken to the instructions of the court to the jury.

*D. A. J. Upham*, for plaintiff in error, insisted that, inasmuch as the wheat in question at the time the assumed contract was made existed in *solido* and was not yet to be produced or created, and though then unthreshed, that unless some consideration was paid, or other act done by way of consideration, it fell within the statute of frauds, and the suit could not be maintained. To this point the counsel citted *Garbut v. Watson*, 5 Bar. & Ald. 612 ; *Atkinson v. Bell*, 8 Bar. & Cress. 277 ; *Watts v. Friend*, 10 id. 442 ; *Smith v. Surnam*, 9 id. 549 ; *Powers v. Ross*, 23 Wend., 271.

It was also claimed and insisted that the contract, until reduced to writing, had no existence so that an action could be maintained thereon for recovery of damages, and that the charge of the court was erroneous.

*J. Holliday*, for the defendant in error, insisted that the staute requiring a memorandum in writing to be made of goods sold above $25 in value, meant goods *in solido*, and that it extended to both contracts executed and executory for the sale of property thus situated. And to this point was cited 8 Cow. 215 ; 4 Bur. 2101 ; 6 Strange, 506 ; 8 Johns. 58.

It was also contended that where, by the terms of a contract, the thing sold, or agreed to be sold, required to be manufactured, or labor bestowed upon it in order to be fitted for delivery, it did not fall within the statute of frauds, or

require to be made in writing.   21 Pick.  205 ;  7 Term, 14;
1 Strange, 506 ;  10 Johns. 364.

HUBBELL J.   This case turns upon the construction which
this court gives to the statute of frauds.   The act of 29
Charles II, though passed nearly two centuries ago, and long
since adopted in most of the states of this Union, unfortu-
nately remains yet a subject of litigation and of doubt, at
least in the United States.

The 17th section of the English act is as follows : " And
be it enacted, ·that after the said four .and twentieth day of
June (1677) no contract for the sale of any goods, wares or
merchandise, for the price of £10 or upwards, shall be al-
lowed to be good, except the buyer shall accept part of the
goods so sold, and actually receive the same, or something in
earnest to bind the bargain, or in part payment, or that some
note or memorandum in writing of the said bargain be made
and signed by the parties to be charged with such contract,
or their agents thereunto lawfully authorized."

The 3d section of the statute of frauds of this state is in
substance the same.   " Every contract for the sale of any
goods, chattels, or things in action, for the price of fifty dol-
lars or more, shall be void unless :

1. A note or memorandum of such contract be made in
writing and subscribed by the parties to be charged there-
with : or

2. Unless the buyer shall, accept and receive part of such
goods, or the evidences, or some of them, of such things in
action : or

3. Unless the buyer shall, at the time, pay some part of
the purchase money.   Stat. Wis. 163.

These acts have never received a judicial construction in
the supreme court of Wisconsin.   The question therefore
remains to some extent open, and by its importance invites a
careful scrutiny and a liberal and sound determination.

The case below was decided upon the weight and authority of the cases which had been ruled in the courts of England, from *Towers v. Osborne*, in 1724, to *Garbutt v. Watson*, in 1822 ; and in the American courts, from *Eichenberger v. McCauley*, decided in Maryland, in ~~1776~~, to *Downs v. Ross*, decided in New York in 1840. For that long period, embracing the palmy days of the courts of both countries, there seemed to be, if not an established construction, at least a concurrence in the principles upon which the decisions rested, whatever might be the diversity in *cases* arising in practice. The courts seemed disposed, for reasons perhaps more nice than wise, to give the statute a strict construction, and not to hold any case within it, unless the property which was the subject of sale was in a shape or condition for delivery at the time of the making of the contract. Hence all contracts for a sale of property which had to be changed in form, or upon which work and labor had to be bestowed by the vendor to prepare it for the acceptance of the vendee, were treated as contracts for *work and labor*, and held not within the statute.

*Towers v. Osborne*, 1 Strange 506, was the first and leading case in England on this subject. This was a contract for a chariot, which was to be made and delivered at a future day, and PRATT, C. J., ruled it not within the statute.

The next case was *Clayton v. Andrews*, 4 Burr, 2101, which was a contract for wheat then unthreshed. Lord MANSFIELD here approved the principle decided in *Towers v. Osborne*, and held the contract for the sale of such wheat not within the statute upon the same principle, but assigned as a reason, that it was a contract to be performed *in futuro*.

In *Rondeau v. Wyatt*, 2 H. Black. decided in 1792, the court disapproved of the reason assigned by Lord MANSFIELD, and held that a contract to deliver goods at a future day was within the statute, and that the mere fact that a contract was *executory* did not save it from the statute. In this case, however, though the reason assigned by Lord

MANSFIELD, in *Clayton v. Andrews*, was held erroneous, his Lordship's decision was review and sustained, upon the principle that the contract embraced work and labor.

*Groves v. Buck*, 3 Maule and Sel. 178, followed in 1814, wherein the court of King's Bench re-affirmed the former decisions, and held that a contract to deliver oak pins, which were then in the slab, and had to be cut out before delivery, was not within the statute.

In the state of Maryland, as early as 1766, in *Eichenberger v. McCauley*, 5 Har. & John. 213, Mr. Justice YATES held that a contract to deliver wheat, then unthreshed, was not within the statute ; herein anticipating by one year the ruling of Lord MANSFIELD on a precisely similar contract in England.

The same doctrine was adopted by the courts of New York. In *Cruikshank v. Burrell*, 18 Johns. 58, SPENCER, C. J., reviews the English cases, and upon their authority holds a contract for a wagon, not yet made, not within the statute. The same court, in *Sewall v. Fitch*, 8 Cow. 215, held a contract for nails, which had to be cut out of the iron before delivery, without the statute ; and in *Bennett v. Hull*, 10 Johns. 364, and *Jackson v. Covert*, 5 Wend. 139, the principle of *Clayton v. Andrews* 4 Burr, 2101, was considered and approved, though in these cases the contracts being for the mere delivery of articles at a future day, and no labor to be performed to prepare them for delivery, the contracts were held not within the statute. The same principle was asserted by the learned court of Massachusetts, in *Mixer v. Haworth*, in 21 Pick., where the purchase of a buggy-wagon, which was at the time nearly completed, but required lining and some trifling additions, was held not within the statute, on the strength of English cases.

So far had the law on this important subject been settled, during a period of a century and a half, when the court of King's Bench, in *Garbut v. Watson*, 5 Barn. & Ald. 613,

Hardell vs. McClure et al.

asserted the doctrine that all contracts were within the scope and intent of the statute, where the result of the bargain was a sale and transfer of the chattels. That was a contract for flour, which had to be manufactured or ground from the grain before delivery. The principle of the past cases was fully discussed and considered, and the decisions of ABBOTT, C. J., Lord MANSFIELD, and Lord ELLENBOROUGH were, by a full bench, overruled. *Atkinson v. Bell*, 8 Barn. & Cress. 277, followed in 1828, and *Smith v. Surnam*, 9 B. & C., in 1829, both adopting the new construction, and in similar cases.

In the state of New York, *Downs v. Ross*, 23 Wend. 271, was decided in 1840, which was a contract for the delivery of wheat, *unthreshed* at the time ; and a majority of the court, in a powerful argument by Justice BRONSON, sustained the new English doctrine, while Mr. Justice COWEN, with his usual learning and ability, dissented, holding that the weight of authority should govern. No other courts of the United States are known to have departed from the original ground. In England the conflict between the older and more recent decisions was settled in 1830, by the statute of 9th Geo. IV, which enacts (chap. 14, § 71), that " the provisions of the statute of frauds shall extend to all contracts for the sale of goods to the value of £10 or upwards, *notwithstanding the goods may be intended to be delivered at some future time, or may not at the time of such contract be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery."*

Thus, this vexed question is set at rest in England. In this country, without further statutory provisions, it is impossible to foresee how the majority of courts will incline. Looking to the intent of the law, which was declared in the preamble to be " for the prevention of frauds and perjuries," and construing its provisions by the well-known meaning of the

language employed, it must be admitted that the earlier decisions confine it to a narrow and technical scope. If the policy of the act was not wholly misconceived, the courts were bound to give it a fair and liberal construction ; and for this reason, it seems to us that the rule of *Garbut v. Watson* should have been adopted in the first instance ; and although in England it has been deemed necessary to untrammel the bench from the binding force of precedents of long standing and high authority, by a solemn act of parliament, yet, in this young state, where the question is presented somewhat as a case of first impressions, this court is at liberty to adopt the rule which seems most in accordance with reason and sound public policy. We are all inclined to the opinion that the decision of the court below in the present case had the better authority, but not the better reason on its side, and we all believe we shall establish a more intelligible rule, better consult public policy, and more correctly expound and apply the law itself, by reversing that decision and adopting the rule of the English statute, than by attempting to enforce the earlier decisions. We regard the act of 9th Geo. IV, as laying down no new principle, covering no new ground, but as containing, in remarkably clear, simple and explicit language, the true construction of the original act. We desire to adopt that language as the construction which this court will give to the 3d section of the statute of frauds of this state. We deem it far more important that a general statute of pervading application to business transactions should be clearly defined and well understood, than that any series of decisions, however ancient or respectable, should be arbitrarily pursued.

The judgment of the court below is reversed, with costs.