Meincke vs. Falk.

---

MEINCKE vs. FALK.

*August 31 — October 10, 1882.*

STATUTE OF FRAUDS. *(1) Contract for the sale of goods or for special skill and labor?*

REVERSAL OF JUDGMENT: *(2) For the admission of improper evidence.*

1. While an executory contract for the sale of an article for the price of $50 or more may be within the statute of frauds, notwithstanding such article does not at the time exist *in solido*, yet where such contract is to furnish materials and manufacture the article according to specifications furnished, or a model selected, and when, without the special contract, the thing would never have been manufactured in the particular manner, shape or condition it was, then the contract is, essentially, for special skill, labor or workmanship, and is not within the statute. *Hardell v. McClure*, 2 Pin., 289, distinguished.

2. Evidence of a party's responsibility, his ownership of a brewery, and the size, extent and value of it, and that he was worth a quarter of a million, was neither material nor proper to prove the

authority of his son as his agent to contract for a carriage. Such evidence was calculated to prejudice the jury, and for the error of its admission a judgment against such party is reversed.

[TAYLOR, J., dissents from the first proposition, holding: (1) When the final result of a contract is the sale of a chattel, it is within the statute, without regard to the question whether the article sold is or is not in existence in the form in which it is to be delivered, at the time the contract is made. (2) If the title to the thing agreed to be sold and delivered remains in the vendor absolutely until it is completed and delivered, and the vendee has no right of property in it until that time, the contract is for the sale of a chattel within the meaning of the statute.]

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

" This is an action to recover the cost of a certain carriage manufactured by the plaintiff, and alleged to have been ordered and contracted for by *Franz Falk* through his agent, Louis Falk, in November, 1878, as a family carriage for the use of himself and family, at a price not exceeding $900, to be ready for delivery on or about May 1, 1879, and which was, as alleged, built and completed according to agreement, and has ever since been kept subject to defendant's order. The defendant refused to accept the same, and the plaintiff claimed, as damages, the value of the carriage, $850, storage ($1.50 per month), interest, and costs. The answer was a general denial. The cause was tried by a jury, who, under the directions of the court, returned a special verdict to the following effect: Louis Falk was authorized by *Franz Falk* to order, and he did order, the carriage in question to be manufactured by the plaintiff at a cost not exceeding $900, to be paid for when ready for delivery on or about May 1, 1879, and the same was manufactured by the plaintiff pursuant to a special order given by Louis Falk, and according to the description given and a model selected by him, and was completed in the plaintiff's shop ready for delivery in May, 1879, of which fact *Franz Falk* was notified June 7, 1879; that in

Meincke vs. Falk.

giving such order Louis Falk intended to procure a carriage of the plaintiff's manufacture, and his skill, labor, and workmanship on it were the special inducement for giving the order, and without such order such carriage would not have been manufactured by the plaintiff and kept by him for sale as part of his general stock; that the value of the carriage was $850, and the value of storage was $1.50 per month, or $50.70, and that the plaintiff was entitled, as damages, to such values and $167.59 interest, amounting in all to $1,068.29. The defendant's counsel moved, upon the minutes of the judge, to set aside the verdict, and for a new trial, on the grounds of various errors and exceptions taken on the trial, and because the same was contrary to law and evidence. The motion being overruled, judgment was entered upon the verdict for damages and costs, from which judgment this appeal is brought."

For the appellant there was a brief by *Cotzhausen, Sylvester, Scheiber & Jones*, and oral argument by *Mr. Cotzhausen*.

*John A. Wall*, for the respondent.

CASSODAY, J. There is no claim that the alleged contract or order for the carriage was in writing. On the contrary, it is conceded that it rested wholly in parol. For this reason it is urged that it came within the statute of frauds, and hence was not binding upon *Franz Falk*, even if Louis had authority to make and did make the contract. The question is not without difficulty, and the decisions of the courts are by no means uniform. The statute provides that " every *contract for the sale* of any goods, chattels, or things in action, for the price of $50 or more, shall be void, unless (1) a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged therewith; *or* (2) unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action; *or* (3) unless the buyer shall, at the time, pay some

part of the purchase money." Sec. 2308, R. S. The substance of this statute was adopted in England more than two hundred years ago, and hence it may be profitable to ascertain the construction which has been given to it by the courts of that country.

In *Towers v. Osborne*, 1 Strange, 506, decided in 1722, "the defendant bespoke a chariot, and when it was made refused to take it, and in an action for the value it was objected that they should prove something given in earnest, or a note in writing, since there was no delivery of any part of the goods. But the chief justice (PRATT) ruled this not to be a case within the statute of frauds, which relates only to contracts for the actual sale of goods, where the buyer is immediately answerable, without time given him by special agreement, and the seller is to deliver the goods immediately." Forty-five years afterwards that decision was expressly sanctioned by Lord MANSFIELD and the whole court in *Clayton v. Andrews*, 4 Burr., 2101, and one of the justices took occasion to say that the case "had always been considered as an authority in point upon questions of this kind." Twenty-five years later, in *Rondeau v. Wyatt*, 2 H. Bl., 63, which was a contract to deliver at a future time 3,000 sacks of flour at a certain price per sack, Lord LOUGHBOROUGH disapproved of the language used in the two former opinions, in so far as they indicated that the statute in no case extended to executory contracts of sale; but the opinion of the court expressly states that "the case of *Towers v. Sir John Osborne* was plainly *out of the statute*, not because it was an executory contract, as it has been said, but because *it was for work and labor done, and materials and other necessary things to be found*, which is different from a *mere contract of sale, to which species of contract alone the statute is applicable*." Page 67.

In *Cooper v. Elston*, 7 Term, 16, Lord KENYON, C. J., follows *Rondeau v. Wyatt*, and says that "*Towers v. Osborne*

was a mere contract for work and labor; the thing contracted for did not exist at the time." Ashhurst, J., was of the same opinion, and Grose, J., said: "The case of *Towers v. Osborne* went upon the general principle that executory contracts were not within the meaning of the statute. If by that were meant contracts for the sale of goods to be executed on a future day, such a construction would be a repeal of the act; but if it only meant such contracts as were incapable of being executed at the time, then the decision was right; and such was the case" then in judgment. Lawrence, J., said: "The case of *Towers v. Osborne*, when truly considered, was not a contract for the purchase of goods, but for the making of something which had no existence at the time." One of the justices in *Groves v. Buck*, 3 Maule & S., 178, decided in 1814, said that "the court, in *Rondeau v. Wyatt*, distinguished it from the two former cases by saying that in those cases some work was to be done." The last case cited was for the non-acceptance of a quantity of oak pins agreed to be furnished for a sum exceeding the amount named in the statute, but which was not then made, but was to be cut out of slabs. It was tried at the common pleas before Gibbs, C. J., who, in answer to the objection that the case came within the statute of frauds, cited and followed *Towers v. Osborne, supra*, and hence a verdict was found for the plaintiff. On appeal to the king's bench the verdict was sustained, and Lord Ellenborough, giving the opinion of the court, said: "The subject matter of this contract did not exist *in rerum natura;* it was incapable of delivery and of part acceptance, and where that is the case the contract has been considered as not within the statute." He then goes on to distinguish the case from *Rondeau v. Wyatt, supra*.

*Garbutt v. Watson*, 5 Barn. & Ald., 613, was decided six years later, and was for the non-acceptance of 100 sacks of flour, to be got ready by the plaintiffs, who were millers, by

a certain time, and the court disapproved of *Clayton v. An-drews, supra,* and followed *Rondeau v. Wyatt, supra;* and ABBOTT, C. J. (Lord TENTERDEN), said: "In *Towers v. Osborne* the chariot which was ordered to be made would never, but for the order, have had any existence. But here the plaintiffs were proceeding to grind the flour for the purposes of general sale, and sold this quantity to the defendant as part of their general stock. The distinction is indeed somewhat nice, but the case of *Towers v. Osborne* is an extreme case, and ought not to be carried further."

The case of *Atkinson v. Bell,* 8 Barn. & C., 277, was decided in 1828. The defendant ordered certain frames of the patentees, and ordered alterations upon them, and then refused to accept them. The action was for goods sold and delivered, goods bargained and sold, work and labor, and materials found and provided, but there was no count for the non-acceptance of the goods. The plaintiffs failed to recover by reason of the defective pleading, but the court said: "If the declaration had contained a count for not accepting the machines, the plaintiffs might have been entitled to recover; and I think now that upon payment of costs they should be allowed to set aside the nonsuit, and add other counts to the declaration, and have a new trial." Page 281. In that case the court expressly declared that if the employer refuses in such case to accept, a special action on the case for such refusal may be maintained by the party employed. Page 283.

So the case of *Towers v. Osborne* was distinguished, but not questioned, in the still *later* case of *Smith v. Surman,* 9 Barn. & C., 574. A year later the statute known as Lord Tenterden's act, was passed, and the statute of frauds in question was thereby extended "to all contracts for the sale of goods, . . . notwithstanding the goods may be intended to be delivered at some future time, *or may not at the time of such contract be actually made, procured, or provided,*

*or fit or ready for delivery*, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery." Thus it appears that although the language was criticised, yet the decision in *Towers v. Osborne* was never overruled by the English courts, but was overruled by the English parliament, for the obvious reason that their courts had refused to overrule it. The statute being thus changed in England, there can be no application here of the subsequent cases there, like *Lee v. Griffin*, 1 Best & S., 272, where a person ordered a set of artificial teeth to be made to fit the mouth of the testator, and then a recovery for non-acceptance was defeated because the case came within the statute of frauds *as amended*.

In *Mixer v. Howarth*, 21 Pick., 207, the defendant ordered the plaintiff to manufacture for him a buggy of a kind described, and on refusal to accept was sued therefor, and Chief Justice SHAW stated the rule thus: " When the contract is a contract of sale, either of an article then existing or of articles which the vendor usually has for sale in the course of his business, the statute applies to the contract as well where it is to be executed at a future time, as where it is to be executed immediately. But where it is an agreement with a workman to put materials together and construct an article for the employer, whether at an agreed price or not, though in common parlance it may be called a purchase and sale of the article, to be completed *in futuro*, it is not a sale until an actual or constructive delivery and acceptance; and the remedy for not accepting is on the agreement." To the same effect are *Spencer v. Cone*, 1 Met., 283, and *Goddard v. Binney*, 115 Mass., 450. This latter case was for the price of a buggy manufactured by the plaintiff for the defendant upon his special order, and the court say: " The effect of these decisions we understand to be this, namely: that a contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures

or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute."

In New Jersey the rules deduced from the English and American cases are stated to be: " (1) That a contract for the sale of goods which is purely executory is as much within the statute as is one to be executed *in præsenti.* (2) That where a contract is made for an article not existing at the time *in solido*, and where such article is to be made *according. to order, and as a thing distinguished from the general business of the maker*, then such contract is, in substance and effect, *not for a sale, but for work and materials.* The first of the above rules is now received everywhere with entire judicial unanimity. With regard to the second rule much conflict of opinion exists, but I think it is recommended by its evident consonance with the object of the statute, as well as by the decided weight of authority." *Finney v. Apgar,* 31 N. J. Law, 270, 271. In support of it the earlier Massachusetts cases, and *Crookshank v. Burrell,* 18 Johns., 58, are cited. This last case was for the refusal to accept the wood-work of a wagon manufactured by the plaintiff upon the special order of the defendant, and it was held not to be within the statute. In the opinion Chief Justice Spencer says: " In *Bennett v. Hull,* 10 Johns., 364, we declared that the statute applied to *executory* as well as other contracts, and we recognized the cases of *Rondeau v. Wyatt* and *Cooper v. Elston, supra,* as containing a just and sound construction of the statute. In giving the opinions in those cases, the judges referred to the case of *Towers v. Osborne* with approbation. . . . The distinction taken by Lord Loughborough in *Rondeau v. Wyatt,* and by the judges, who gave opinions *seriatim,* in *Cooper v. Elston,* was between a

contract for a thing existing *in solido* and an agreement for a thing not yet made to be delivered at a future day. The contract in the latter case they consider not to be a contract for the sale and purchase of goods, but a contract for work and labor merely. However refined this distinction may be, it is well settled, and it is now too late to question it."

That case was followed by *Sewall v. Fitch*, 8 Cow., 215, which was to recover damages for not delivering cut nails to be manufactured by the defendant under a contract with the plaintiff, and SAVAGE, C. J., took occasion to say that *Towers v. Osborne* was "rightly determined, though upon a wrong principle," as held in *Rondeau v. Wyatt*. To the same effect are *Robertson v. Vaughn*, 5 Sandf., 1; *Donovan v. Willson*, 26 Barb., 138; *Parker v. Schenck*, 28 Barb., 38; *Mead v. Case*, 33 Barb., 202; *Parsons v. Loucks*, 4 Robert., 216; *S. C.*, affirmed, 48 N. Y., 17. This last case was for the alleged breach of contract to manufacture and deliver a quantity of paper, and it was held not to be within the statute. The opinion of the court states that "the distinction is between the sale of goods in existence at the time of making the contract, and an agreement to manufacture goods. The former is within the prohibition of the statute, and void unless it is in writing, or there has been a delivery of a portion of the goods sold, or a payment of the purchase price. The latter is not." Page 19.

The more recent case of *Cooke v. Millard*, 65 N. Y., 359, follows this distinction. That was for the price of lumber then in the plaintiff's yard, but a portion of which was to be dressed in accordance with the defendant's contract of purchase, and it was held to be within the statute. The judge writing the opinion of the court, however, notwithstanding their inapplicability to the case then in hand, summarily disposes of the reasoning in *Robertson v. Vaughn*, *Crookshank v. Burrell*, *Sewall v. Fitch*, *Parker v. Schenck*, and *Parsons v.*

*Loucks, supra,* with the single remark that "these cases are based on certain old decisions in England, such as *Towers v. Osborne* and *Clayton v. Andrews,* which have been wholly ·discarded in that country." Page 360. In support of this con-clusion, he seems to adopt the reasoning and conclusions in *Lee v. Griffin, supra,* and other more recent English cases, as hav-ing, " after great discussion and much fluctuation of opinion " in the courts, "settled" the question in that country, without seeming to recognize the fact that the question had already been *settled* in that country by act of parliament for more than thirty years before the decision of *Lee v. Griffin* was announced, or the further fact that *Towers v. Osborne,* and *Clayton v. Andrews,* rest upon different principles, and had been clearly distinguished by the courts of both countries. See page 358. The opinion, however, concedes that it is too late to adopt the rule in *Lee v. Griffin,* but thinks it is a sub-ject "for the consideration of the legislature," and finally states the rule of that state to be "that when the chattel is in existence, so as not to be governed by· *Parsons v. Loucks, supra,* the contract should be deemed to be one of sale, even though it may have been ordered from the seller, who is to do some work upon it to adapt it to the uses of the purchaser. Such a rule makes but a single distinction, and that is between existing and non-existing chattels." Page 361.

From the whole opinion, however, it was the evident inten-tion of the court to preserve the distinction made in some of the English cases, *supra,* and adopted by Chief Justice SPEN-CER in *Crookshank v. Burrell, supra,* and Judge BRONSON in *Downs v. Ross,* 23 Wend., 271–2, which was, that to bring a case within the statute it must be "a contract for a thing existing *in solido*" at the time of making the contract. We infer this because the learned judge distinguishes the case from *Sewall v. Fitch* and *Parsons v. Loucks, supra,* and states that in the latter case the paper was not in existence, " ex-cept so far as such existence may be argued from the fact

that matter is indestructible," and then, in attempting to reconcile the New York cases, he expresses an unwillingness " to quarrel with" *Mead v. Case, supra,* where an order was given to polish, letter, and finish certain blocks of marble then in the yard in the manner directed, and with an inscription named, as a monument, and the court held that there was no *monument* in existence at the time of the bargain.

We are not aware of any reported judicial utterance in this state bearing upon the question, except *Hardell v. Mc-Clure,* 2 Pin., 289; *S. C.,* 1 Chand., 271. In that case the wheat was to be delivered at a particular mill, and the trial court refused to instruct the jury " that the wheat existing *in solido* at the time the contract was made, and not having to be raised or manufactured, and though unthreshed, it was a contract within the statute of frauds, and the plaintiff could not recover; " and for that refusal the judgment was reversed. On the strength of *Garbutt v. Watson,* and some other later English cases, *supra,* the opinion of the court disapproves of *Clayton v. Andrews, supra,* and *Eichelberger v. McCauley,* 5 Harr. & J., 213, and follows and approves *Downs v. Ross,* 23 Wend., 271, which was also a contract for unthreshed wheat. This is put upon the ground that it is the " better reason," though not the " better authority." After a very careful, examination of the authorities, we are induced to believe that *Hardell v. McClure, supra,* was well decided, not only by force of reason, but upon the weight of authority, for it was clearly not a contract for special labor in manufacturing anything, but a contract to sell and deliver a certain quantity of wheat. See, also, *Clark v. Nichols,* 107 Mass., 547.

The facts in the case before us, as appears from the special verdict, are in no respect similar to those in *Hardell v. Mc-Clure.* There is no claim that at the time of the alleged contract the carriage had any existence *in solido.* The plaintiff was a manufacturer of carriages, but whether even the materials from which the one in question was manufact-

ured were then in stock, or had been procured by the plaintiff, does not appear.    Such a carriage would necessarily require a variety of material, which may at the time, for aught that appears, have been owned by other parties and scattered in different parts of the country.    According to the verdict of the jury it was manufactured upon a special order, and according to a particular model selected in behalf of *Franz Falk*, and the plaintiff's skill, labor, and workmanship was a special inducement on the part of Louis Falk in giving the order, and without such order the carriage in question would not have been manufactured by the plaintiff, nor kept by him for sale as a part of his general stock.    The facts are substantially the same as in *Towers v. Osborne, Mixer v. Howard, Goddard v. Binney, Crookshank v. Burrell, supra,* and, in effect, the same as *Groves v. Buck, Sewall v. Fitch, Robertson v. Vaughn, Donovan v. Willson, Parker v. Schenck, Mead v. Case,* and *Parsons v. Loucks, supra,* and to the same effect are *Crockett v. Scribner,* 64 Me., 447; *Abbott v. Gilchrist,* 38 Me., 260; and *Hight v. Ripley,* 19 Me., 137. The facts here seem to bring the case within the principle of all the decisions cited, having any bearing upon the subject, except the English cases under their recent statute.

It may be well to observe that if we were to apply the rule adopted in New York of existence *in solido* or nonexistence as the only test, and if the facts were that the carriage in question was such as the plaintiff was then accustomed to manufacture and keep in stock for general sale, and that this carriage would have been manufactured by the plaintiff without any order from *Falk,* yet it would be without the statute, because it was not in existence *in solido* at the time of making the contract.    But such assumed facts would bring the case within the statute, under the rule adopted in Massachusetts, since it is there in effect held that if, in the ordinary course of business, the article would have been manufactured or procured for the general market by the

vendor, in the absence of any special order or contract with the vendee, then it is a "contract for the sale of" the article, and not a contract for skill, labor, or workmanship in producing the article. It was the policy of the early English decisions that the statute in no case extended to executory contracts of sale, but only to contracts which were capable of being executed immediately, which was subsequently overruled in that country and disapproved in Massachusetts, New Jersey, Maine, and some of the New York cases, but which policy is so far adopted in some of the other New York cases as to hold that if the thing contracted for is not in existence at the time, then it cannot come within the statute, notwithstanding it may, in the language of the act, be a "contract *for* the sale" of the article, and in no sense a contract for skill, labor, or workmanship. We are inclined to think that the rule announced by Chief Justice SHAW, *supra*, and followed in *Goddard v. Binney*, 115 Mass., 450, supported, as it is, by the New Jersey, Maine, and some of the New York cases, is in substantial harmony with the rule as finally settled in England prior to their recent statute, and hence is entitled to our confidence and respect. We therefore hold that, while an executory contract for the sale of an article for the price of $50 or more may be within the statute, notwithstanding such article does not at the time exist *in solido*, yet where such contract is to furnish materials and manufacture the article according to specifications furnished or a model selected, and when without the special contract the thing would never have been manufactured in the particular manner, shape, or condition it was, then the contract is essentially for special skill, labor, or workmanship, and is not within the statute.

But we must reverse this judgment for a manifest error committed upon the trial. The plaintiff was allowed, against objection of counsel on the part of the defense, to testify as to *Franz Falk's* financial circumstances, his responsibility

and reliability, his ownership of a brewery and the size, extent and value of it, and finally that he was worth a quarter of a million. It is urged that such testimony tended to prove that Louis had authority from his father to make the contract in question. That was one of the principal questions in dispute, and justice required that in its determination the jury should only consider proper and material evidence. The testimony referred to was not, in our opinion, of that character, but well calculated to prejudice the jury against the party who was then the defendant. For this manifest error the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

TAYLOR, J. I cannot concur in so much of the opinion of the court in this case as holds that 'the contract which is the basis of the respondent's cause of action is not within the statute of frauds. In my opinion, the contract upon which suit is brought is a contract for the sale of a chattel of the price of $50 or more, and is therefore void unless a note or memorandum of such contract was made in writing, and subscribed by the parties; or some part of the purchase money was paid by the appellant. I do not think the case at bar differs in principle, though it may in its facts, from the case of *Hardell v. McClure*, 2 Pin., 289. The decision of the court in that case seems to have been accepted as good law to its fullest extent, and has not, so far as I have been able to ascertain, been questioned by this court since it was announced, thirty years ago. I think it much safer to adhere to the broad construction of the statute adopted in that case, than to attempt to limit it by distinctions which cannot be well defined, and which will necessarily give rise to endless litigation. I think the true test of what is a sale of a chattel, within the meaning of the statute, is that when the final result of the contract is the sale of a chattel, it is within the statute, without reference to the question whether

the article sold is or is not in existence, in the form in which it is to be delivered, at the time the contract is made, or not. If the title to the thing agreed to be sold and delivered to the vendee remains in the vendor absolutely until it is completed and delivered, and the vendee has no right of property in the same until it is finished and delivered, then the contract for sale is the sale of a chattel within the statute, and void unless made in the manner prescribed by the statute·

*By the Court.*— The judgment of the circuit court is reversed and the cause is remanded for a new trial.